[Civ. No. 2048. Third Appellate District.—October 8, 1919.]

T. TAKEBA, Petitioner, v. THE SUPERIOR COURT OF SAN JOAQUIN COUNTY et al., Respondents.

[1] RECEIVERS—ACTION IN UNLAWFUL DETAINER—RIGHTS OF PARTIES—PROHIBITION.—In a proceeding in prohibition brought for the purpose of determining the right of the superior court to appoint a receiver in an action in unlawful detainer, the appellate court cannot decide the controversy between the parties as to the ownership of the fruit grown on the land in question.

[2] ID.—APPOINTMENT OF IN UNLAWFUL DETAINER ACTIONS—CODE AMENDMENT NOT RETROACTIVE.—The 1919 amendment to section 564 of the Code of Civil Procedure, authorizing the appointment of a receiver in an action in unlawful detainer in which the superior court has exclusive original jurisdiction, deals with the substantive rights of the parties as well as in the matter of a remedy and, therefore, is not applicable to actions instituted prior to the date it went into effect.

[3] ID.—LITIGATION AS TO TITLE TO PROPERTY—DANGER OF LOSS—POWER TO APPOINT RECEIVER.—Where the dispute in litigation is as to the title to the property involved therein and it is made satisfactorily to appear that the property is of such a character or is in such a situation that it is likely to be lost or destroyed or greatly deteriorated in value in the hands of the party in possession before the merits of the controversy can be adjudicated, and a satisfactory showing is made that the plaintiff has some interest in the property, or that the plaintiff's right thereto or some portion thereof is reasonably certain, the court may, in the exercise of its discretion, appoint a receiver to take custody of the property pending the litigation and the determination of the rights of the parties.

[4] ID.—SUFFICIENCY OF APPLICATION FOR APPOINTMENT—REVIEW ON PROHIBITION.—Where the order appointing a receiver in a given case is within the jurisdiction of the court, whether the facts disclosed to the court on the application for the appointment are such as legally to warrant it in putting in operation or applying its jurisdiction in that regard cannot be inquired into or reviewed on an application for a writ of prohibition.

[5] ID.—PERSONS INTERESTED NOT MADE PARTIES—JURISDICTION OF COURT NOT AFFECTED.—The power of the court to appoint a receiver in a given case is not affected by the fact that certain persons who claim an interest in the property of which the receiver is to take possession are not made parties to the action and, therefore, are without opportunity to protest in court against the appointment of the receiver.

PROCEEDING in Prohibition to correct the action of the Superior Court of San Joaquin County, and George F. Buck, Judge thereof, in appointing a receiver. Alternative writ discharged.

The facts are stated in the opinion of the court.

3. Appointment of receivers generally, note, 72 Am. St. Rep. 29.
Power of court to appoint receiver for purpose of development or preservation of realty, note, Ann. Cas. 1915D, 1034.

W. Goodwin Williams, John R. Cronin, G. M. Steele and George F. McNoble for Petitioner.

Wm. E. Kleinsorge, Elliott & Atkinson, C. E. Fleming, R. L. Beardslee and Arthur L. Levinsky for Respondents.

HART, J.—This is an original application for a writ of prohibition. The petition alleges as follows:

That there is pending in the superior court, in and for the county of San Joaquin, before Honorable George F. Buck, the judge thereof, an action in which Charles W. Mier is plaintiff and M. Mizushima is defendant. In the complaint in said action it is alleged that plaintiff is the owner and entitled to the possession of certain real property in the county of San Joaquin; that, on the fourth day of November, 1918, Laura M. Eagan was the owner of said property; that she and defendant entered into a lease of said property, among the terms of said lease being the following: That the terms of the contract should apply only to the crops grown on said land during the season of 1918–19; the tenant agreed to furnish all labor and supplies free of cost to the owner and agreed properly to cultivate said land; all fruit grown upon the land was to be marketed in the name of the owner. Said lease contained the following covenant: "It is further understood and agreed that should said owner sell the whole or any part of said ranch during the life of this agreement, and the purchaser is not willing to abide by the terms of this agreement, then said tenant will accept reasonable compensation for his labor up to that time performed on the whole or the portion of said ranch which may be sold. In case of disagreement as to the amount of compensation to which said tenant shall be entitled for said labor performed, each of the parties, said owner and said tenant, may select an arbitrator, and those two may select a third person and a decision of a majority of said three arbitrators shall be accepted as final and binding on the parties to this agreement."

It was then alleged in the complaint that defendant entered into possession of the land and was in possession thereof at the time of the commencement of the action. "That on the second day of May, 1919, said Laura M. Eagan sold and conveyed said above-described real property to the plaintiff herein, and so notified said defendant in writing" on said

day; that the plaintiff was not willing to abide by the terms of said lease, as provided in the portion of the lease above quoted, and that, on the second day of May, 1919, plaintiff and Laura M. Eagan tendered defendant the sum of one thousand dollars "for and as reasonable compensation for the labor of said defendant performed on said premises during the term of said lease," which tender defendant refused to accept; that, on the 3d of June, 1919, plaintiff notified defendant in writing of the appointment of an arbitrator and demanded that defendant appoint another, for the purpose of fixing the amount of compensation to be paid defendant for his labor, which defendant neglected and refused to do; and that, on said last-mentioned date, plaintiff caused to be served on defendant a notice to quit and surrender possession of said premises, which defendant refused; that approximately thirty acres of said land were planted to peach trees and approximately fifteen acres to apricot trees, and that the crop of apricots was ready to be harvested and was of the value of four thousand five hundred dollars; that defendant wrongfully claims the ownership of said apricots and that unless restrained he will sell and dispose of said crop. The prayer of the complaint was for judgment for restoration of the premises and that defendant be ordered to surrender possession thereof upon the payment of a reasonable compensation for his labor; and that defendant be restrained from selling or disposing of said crop of apricots or committing any waste of the premises.

On the eleventh day of June, 1919, the court issued a restraining order as prayed for in the complaint and set the sixteenth day of June as the date upon which defendant might show cause why an injunction should not issue. On said last-named date, defendant filed an affidavit in opposition to the issuance of an injunction, a hearing was had upon the order to show cause, and the restraining order was dissolved. On the twenty-ninth day of July, 1919, defendant filed an answer in the action.

On August 8, 1919, an affidavit was filed in support of plaintiff's application to have a receiver for the premises appointed and, on August 11th, defendant filed an affidavit in opposition thereto. On August 12, 1919, the court appointed E. A. Humphrey as receiver of said real property.

The petitioner herein, T. Takeba, on August 19, 1919, filed a petition in said action in which it was alleged that, on the 18th of June, 1919, the defendant, Mizushima, had conveyed to one J. A. Ballantyne all his right, title, and interest in and to said crop of apricots, and that, on June 24th, said Ballantyne, for a good and valuable consideration, sold said crop of apricots to petitioner; that, subsequent to the 24th of June, 1919, petitioner harvested and sold said crop of apricots; that there was a crop of peaches growing upon said land which the receiver threatened to harvest. Petitioner asked that the court revoke or modify the order appointing receiver; that the receiver be directed to cease from interfering with petitioner in the harvesting of said crop of peaches, and that he surrender full possession and control to petitioner of said crop.

Said petition of T. Takeba came on for hearing in the superior court on the twenty-second day of August, 1919, and was by the court denied.

The petition for writ of prohibition was filed in this court on the twenty-sixth day of August, 1919, and, after setting out the proceedings above referred to, alleged that the receiver was in possession of and was harvesting said crop of peaches and threatened to sell and dispose of the same; that petitioner had no knowledge of the application made for the appointment of said receiver, nor was he afforded any opportunity to be heard in opposition thereto. The prayer of the petition is for a writ of prohibition directed to the superior court of the county of San Joaquin and to the receiver to prohibit them from exercising any control over the property of petitioner, and that all property taken by respondents be restored to petitioner.

The petition here asks that the writ prayed for be made to run against the receiver as well as against the court appointing the receiver; but, as is said in *Havemeyer* v. *Superior Court,* 84 Cal. 327, 389, [18 Am. St. Rep. 192, 10 L. R. A. 627, 24 Pac. 127, 137], "the property in the hands of a receiver is in the hands of the court. The receiver is the mere instrument of the court, and what he does the court does. It is the court, therefore, and not the receiver, which holds, administers and disposes of the property in his hands; and so long as the property remains undisposed of, action by the court is necessary. . . . The writ runs to the court and oper-

ates directly upon the court, but indirectly upon the receiver. If it is served upon the receiver, it is only that he may have timely notice that the proceedings of the court are arrested, and may stay his hand, as he is bound to do, having no power to act independently of the court, from which he derives all his authority.''

The sole and only question to be determined in this proceeding is, manifestly, whether the respondent court stepped beyond its jurisdiction in appointing a receiver in the case of *Mier* v. *Mizushima,* mentioned above, and in taking, through the receiver so appointed, possession of the fruit referred to in the petition for this writ.

[1] Numerous affidavits have been filed herein touching the merits of the controversy—that is, affidavits addressed to the question as to the ownership of the fruit. But we cannot decide that controversy in this proceeding. If it appears that the court was within its jurisdiction under the law in appointing the receiver, then the inquiry, so far as this proceeding is concerned, is at an end.

[2] Section 564 of the Code of Civil Procedure enumerates, in as many different subdivisions thereof, a number of occasions upon which, upon a proper showing, the superior court may appoint a receiver. As said section read before an amendment thereof by the legislature of 1919, whereby a new subdivision was added thereto, the only subdivision of said section from which the authority for the appointment of a receiver could be drawn in a case of the character of the one involved herein was subdivision 6. In 1919, however, the legislature added to the section the following provision, numbered 6: ''In an action of unlawful detainer, in those cases in which the superior court has exclusive original jurisdiction.'' The subdivision which, previous to said amendment, was numbered 6 is still retained in said section as number 7.

The amendment above mentioned did not take effect until ninety days after the adjournment of the legislature of 1919 (Const., art. IV, sec. 1. See p. 204, Treadwell's Const.), which was on the twenty-second day of April, 1919. The action involved herein, in which the receiver was appointed, was instituted on June 10, 1919, which was before the amendment referred to went into effect.

It is contended by the attorneys for the respondents that the said amendment of section 564 of the Code of Civil Pro-

cedure, since it involves a change only in the matter of a
remedy, is retroactive in its effect and that, therefore, the re-
spondent court acted, when appointing the receiver, within
or under a provision of law expressly authorizing the appoint-
ment of a receiver in cases of unlawful detainer, of which
said court has original jurisdiction, and that this is such a case.
We are unable to coincide with that view. The power vested
by the codes in superior courts to appoint receivers in actions
pending before them involves in its effect more than a mere
remedy. Of course, the power is in a sense remedial, but in
its exercise the substantive rights of the parties are neces-
sarily dealt with. When exercised, it means the taking of
property by the court from one who may turn out to be the
rightful- owner thereof, and transferring it, *pro re nata,* to
an agent of the court vested with power to handle and dis-
pose of it according as the court may direct for the purposes
of the action in which such agent or receiver is appointed.
There is no power vested in the courts more jealously guarded
or safeguarded than this very power to appoint a receiver
to take, for the court, the possession and control of the prop-
erty of others, and this is because, as above suggested, the
exercise of the power may mean the divesting the owner of
his lawful right to remain in possession of his property. It
is, therefore, obvious that, while the power to appoint a re-
ceiver is provisional and an ancillary remedy, its scope may
go beyond that of a mere remedy and strike at the very sub-
stance of a person's property rights. It cannot, therefore,
be well contended that a legislative amendment extending the
power of the superior courts in the matter of appointing re-
ceivers or giving such courts the right to appoint an officer
with the usual powers of such a representative of the court is
retroactive. At the time the court made the appointment in
this case, it was limited in its power to do so by the law as it
then read. The legislature having taken upon itself the right
to name the cases in which a receiver may be appointed, its
statute enumerating those cases is the measure of the power
of the superior courts in that particular, and if the right to
appoint a receiver in this case did not exist by virtue of the
statute when the appointment was made, then it is very ob-
vious that the court was without authority to make the order.

But we think the respondent court was authorized to act in
this case, upon a proper showing, of course, upon the provi-

visions of what was formerly subdivision 6 of the code section above named, but which is now, and has been since the above considered amendment of 1919, subdivision 7. It reads: "In all other cases where receivers have heretofore been appointed by the usages of courts of equity."

[3]    Where the dispute in a litigation is as to the title to the property involved therein and it is made satisfactorily to appear that the property is of such a character or is in such a situation as that it is likely to be lost or destroyed or greatly deteriorated in value in the hands of the party in possession before the merits of the controversy can be adjudicated, and a satisfactory showing is made that the plaintiff has some interest in the property, or that the plaintiff's right thereto or to some portion thereof is reasonably certain, the court may, in the exercise of its discretion, appoint a receiver to take custody of the property pending the litigation and the determination of the rights of the parties. This means, of course, that the court itself may take possession or custody of the property and hold or dispose of it, according as the nature of the property or the exigencies of the situation with respect to it may require.

That the court did not transcend its lawful authority in making the appointment cannot, it seems to us, for a moment be doubted. Whether the facts disclosed to the court on the application for the appointment of a receiver were such as legally to warrant it in putting in operation or applying its jurisdiction in that regard in the action involved herein, presents another and an entirely different question, but one which we are precluded from inquiring into or reviewing in this proceeding. The sole function or office of the writ of prohibition is to arrest or prevent the prosecution of proceedings before or to be taken by any tribunal, corporation, board, or person, whether exercising judicial or ministerial functions, when such proceedings are without or in excess of the jurisdiction of such tribunal, etc. (Code Civ. Proc., sec. 1102), and will issue only where there is not a plain, speedy, and adequate remedy in the ordinary course of law. (Code Civ. Proc., sec. 1103.) Thus it is plain that the sole object of the writ is to prevent the taking of some action or the doing of some act on the part of an inferior tribunal, board, etc., which has not been done but which such tribunal or board or person threatens to do. Obviously, as the very name

of the writ plainly implies, its object is not to undo something which has already been done. There is another writ whose specific office is to do that. (Code Civ. Proc., secs. 1067, 1068.)

[4] When the application was made for this writ, the very action to prevent which this writ was sought had already been done. The receiver had then been appointed and the action of the respondent court in that particular had been fully completed. But the theory of the petitioner in applying for this writ was that the order appointing the receiver was void and that, therefore, as was held in the Havemeyer case, *supra*, the action of the receiver in taking the property and threatening to dispose of it constituted the action and the threatened action of the court which could be prevented through the operation of this writ. We hold, however, that the order appointing a receiver here was, under the law, within the jurisdiction of the court. In the Havemeyer case, the respondent court, in a proceeding instituted by the attorney-general of the state in *quo warranto* against the American Sugar Refinery Company, a California corporation, to have the forfeiture of its charter declared, made an order appointing a receiver, and the supreme court held that the superior courts were wholly without the right or jurisdiction to appoint a receiver of a corporation in an action in *quo warranto*, the purpose of which is to cause its charter to be forfeited, and that, therefore, the appointment of a receiver in that case was void *ab initio*. Hence, it was said in that case that it was proper to arrest and annul the action of the receiver done under that void order, the action of the receiver within the scope of his assumed powers as such being the action of the court. It was further said in that case (quoting from the syllabi) : ''The operation of the writ of prohibition is primarily and principally preventive rather than remedial, and is excluded when the action of the inferior tribunal is fully completed, and nothing remains to be done under its void order, but if its action is only partially and not fully completed, further proceedings may be stayed, and in such case the office of the writ is so far remedial that it will annul such prior proceedings as may be necessary to make the remedy complete.'' Here, as before stated, the action of the court in appointing a receiver was fully completed, and when the receiver proceeded to exercise the functions or perform the

duties of his receivership, by taking charge of the property, he was then acting under a lawful and not a void order of the court and with full authority to do the things his office required of him. And so he has continued, as such receiver, to act in the premises in every step he has taken, so far as we are advised by the petition here. Obviously, this case is in no sense similar or analogous to the Havemeyer case.

[5] The plea of the petitioner that he was not a party to the action of *Mier* v. *Mizushima,* that he had no knowledge of the application by the plaintiff for the appointment of a receiver, and had no opportunity to be heard in opposition to said application, reveals as to him, perhaps, an unfortunate situation, but it does no more than that, so far as the present proceeding before us is concerned. The power of the court to appoint a receiver still existed, notwithstanding that he or other parties who might claim an interest in the property of which the receiver was authorized under his appointment to take possession were not made parties to that action. It may be and probably is true that at the time of the preparation and filing of the complaint in said action the plaintiff had no knowledge of any claim of petitioner to the fruit. In any event, as stated, the court's jurisdiction to appoint a receiver is in nowise affected by the fact that the petitioner was not a party to the suit and was without opportunity to protest in court against the appointment of the receiver.

We may add, although the suggestion is wholly gratuitous so far as the requirements of the decision herein are concerned, that the petitioner is not without an adequate and sufficiently speedy legal remedy. In the first place, it may be observed that, having in some way obtained a notice of the commencement of the action of *Mier* v. *Mizushima* (he filed a petition asking for the revocation of the order appointing a receiver), he could have intervened in that action and therein had his rights litigated and adjudicated. And he still has remaining to him an action against the receiver and his bondsmen in conversion or claim and delivery for the return of the property or for damages or the value thereof, in case it cannot be returned, for the wrongful taking and appropriation thereof, assuming it to have been so taken and appropriated.

However, it is plain that the writ of prohibition is not the proper remedy for the correction of the action of the court

in appointing the receiver in the action of *Mier* v. *Mizushima*, and the alternative writ or order to show cause must, therefore, be discharged, and it is so ordered.

Ellison, P. J., *pro tem.*, and Burnett, J., concurred.