[No. D017954. Fourth Dist., Div. One. Mar. 15, 1994.]

NICOLAS MARSCH III et al., Plaintiffs and Appellants, v.
RONALD WILLIAMS et al., Defendants and Respondents.

---

[1]Reprinted without change in 28 Cal.App.4th 1519, to permit tracking pending review by the Supreme Court.

COUNSEL

Suuzen Ty Anderson, Thorsnes, Bartolotta, McGuire & Padilla, Michael T. Thorsnes and Frederic L. Gordon for Plaintiffs and Appellants.

Blase, Valentine & Klein, George C. Fisher, Lindley, Lazar & Scales and Luke R. Corbett for Defendants and Respondents.

OPINION

BENKE, J.—In this appeal, plaintiff Nicolas Marsch III[1] appeals a judgment confirming an arbitration award. The award was made by an arbitration panel (Panel) at the conclusion of an arbitration proceeding between Marsch and defendant Ronald Williams,[2] both of whom are partners in the Horizon Properties general partnership. The award appointed one of the Panel members as receiver to oversee the dissolution of the partnership and the sale of the partnership property. Marsch contends: (1) the award should be vacated because the Panel exceeded its powers by failing to apply California law to the dispute; and (2) the award should be corrected to require that the receiver be sworn and bonded as mandated by Code of Civil Procedure section 567. For the reasons set forth below, we affirm the judgment in part, reverse in part and remand with instructions.

### FACTUAL BACKGROUND

#### Horizon

In January 1985 Marsch formed a California corporation called New Horizon Group, Inc. (New Horizon), and purchased a 400-acre parcel of land

---

[1] In addition to Marsch, NHG, Inc., is also a plaintiff. Marsch and NHG, Inc., are collectively referred to as Marsch unless otherwise indicated.

[2] In addition to Williams, the Ronald Williams Living Trust and Palo Alto Town & Country Village, Inc., are also defendants. Unless otherwise indicated they are collectively referred to as Williams.

in Rancho Santa Fe California for $11.4 million. Additional purchases by New Horizon and its successor increased the size of the parcel to 541 acres. Marsch planned to build a golf course and develop approximately 240 luxury home sites on the land.

Later in 1985 Marsch realized the New Horizon project needed a financial partner with substantial assets. Marsch was introduced to Williams, a wealthy man with many years' experience in real estate and golf course development. After discussing the project with Williams, Marsch agreed to sell Williams 50 percent of New Horizon's stock for $25,000. According to Marsch, Williams also promised to arrange all further financing for the project.

In December 1986 Marsch and Williams agreed to reorganize the New Horizon project. They created the Horizon Properties general partnership (Horizon) by way of a December 18, 1986, partnership agreement. This agreement, which became effective January 1, 1987, contained a binding arbitration clause.[3] In February 1987 Marsch and Williams dissolved New Horizon and transferred its assets to Horizon. Marsch and Williams were the only partners of Horizon and each owned a 50 percent share in the partnership.

*Marsch/Williams Dispute*

The early years of Marsch and Williams's association were marked by good faith and cooperation. However, in 1988 Marsch and Williams began to have disagreements about how to best proceed with the Horizon project. Marsch alleges it was during this time that Williams conceived a scheme to steal Marsch's interest in Horizon. The essence of this alleged scheme was for Williams to place such financial pressure on Marsch that he would sell his interest to Williams at Williams's price. Marsch claims Williams pursued this objective on two fronts: (1) Williams delayed funding and otherwise obstructed the Horizon project so as to make timely completion impossible,

---

[3] In relevant part the clause states: "Section 6.04 . . . [¶] Any dispute, controversy or claim arising out of, or relating to, this Agreement or any alleged breach thereof, shall be settled by binding arbitration . . . . In the event that the partners cannot agree upon a single arbitrator, an arbitrator or arbitrators shall be selected and the issues decided in accordance with the rules of the American Arbitration Association then in effect. The arbitration award shall be final and binding upon the Parties and judgment upon such award may be entered in any court having jurisdiction to enter such judgment."

and (2) Williams undermined two other partnerships he and Marsch controlled by refusing to cooperate in the sale or refinancing of buildings in La Jolla the partnerships owned.[4]

Throughout 1988 and 1989 the relationship between Marsch and Williams continued to deteriorate. The Horizon project was delayed as the partners disagreed on, among other matters, the development schedule, the sale and pricing of lots, the amount of funding necessary for the project and the use of partnership funds by Marsch. Work on Horizon stopped in February 1990.

### PROCEDURAL BACKGROUND

On July 17, 1990, Marsch filed a complaint against Williams, alleging fraud, breach of fiduciary duty, intentional infliction of emotional distress and other causes of action based upon Williams's conduct in Horizon. On September 19, 1990, Williams petitioned the trial court for an order to compel arbitration and stay litigation based upon section 6.04 of the Horizon partnership agreement. The trial court granted Williams's petition and entered an order compelling arbitration on November 27, 1990. The arbitration proceeding took place in Palo Alto, California, before a 3-member panel, took 10 months to complete and consumed 88 trial days.

The Panel issued its award and reasoned opinion of award on June 18, 1992. It found that "[Williams] decided that he wanted to buy out [Marsch] on [Williams's] terms, that the way to accomplish this was to keep [Marsch] in a financially strapped situation, and therefore [Williams] determined to delay completion in order to avoid selling lots and memberships. Such conduct is a breach of [Williams's] fiduciary duty." The Panel found this breach of fiduciary duty inflicted nearly $48.5 million worth of damage on Horizon and ordered Williams to pay Horizon that amount. However the Panel permitted Williams to offset this judgment against the $70 million Horizon owed Williams and the Williams Trust. The Panel also appointed one of its members as receiver to supervise the sale of the Horizon property and the dissolution of the partnership.

Over Marsch's objection, the trial court confirmed the arbitration award. Following the trial court's ruling, Marsch submitted a proposed judgment which required the receiver be sworn and bonded. The trial court rejected Marsch's proposed judgment and entered an alternative proposed by Williams. Williams's alternative did not require an oath or bond from the receiver.

---

[4]Marsch brought separate claims with respect to the La Jolla partnerships. The arbitrability of those claims are the subject of Williams's appeal in *Marsch* v. *Williams, post*, page 250 [28 Cal.Rptr.2d 398].

Marsch filed a timely notice of appeal from the order confirming the arbitration.

ISSUE ON APPEAL

On appeal Marsch contends the arbitration award should be set aside because he believes he, rather than the receiver, should have been given possession of the corporation's assets.

DISCUSSION

I

■ California has a well-established policy favoring arbitration as a speedy and relatively inexpensive means of settling disputes. (*Ericksen, Arbuthnot, McCarthy, Kearney & Walsh, Inc.* v. *100 Oak Street* (1983) 35 Cal.3d 312, 322 [197 Cal.Rptr. 581, 673 P.2d 251].) To support this policy and encourage parties to settle their disputes through arbitration, it is essential arbitration judgments be both binding and final. Thus, as a general rule courts will indulge every reasonable intendment to give effect to arbitration proceedings. (*Knass* v. *Blue Cross of California* (1991) 228 Cal.App.3d 390, 393 [279 Cal.Rptr. 124]; *Pacific Inv. Co.* v. *Townsend* (1976) 58 Cal.App.3d 1, 9 [129 Cal.Rptr. 489].) This rule conforms with the parties' expectations when agreeing to submit to arbitration: "This expectation of finality strongly informs the parties' choice of an arbitral forum over a judicial one. The arbitrator's decision should be the end, not the beginning, of the dispute." (*Moncharsh* v. *Heily & Blase* (1992) 3 Cal.4th 1, 10 [10 Cal.Rptr.2d 183, 832 P.2d 899] [*Moncharsh*].)

To ensure that an arbitrator's decision is, indeed, the end of a dispute, arbitration judgments are subject to extremely narrow judicial review. (*Southern Cal. Rapid Transit Dist.* v. *United Transportation Union* (1992) 5 Cal.App.4th 416, 422 [6 Cal.Rptr.2d 804].) The scope of this judicial review was comprehensively treated by our Supreme Court in *Moncharsh*. In that case the court reviewed the history of arbitration in California, from the earliest days of statehood to the present, and concluded the exclusive grounds for vacating an arbitration award are the five statutory grounds found in Code of Civil Procedure[5] section 1286.2.[6] (*Moncharsh, supra*, 3 Cal.4th at pp. 27-28.) Unless one of the enumerated grounds exists, a court

---

[5]All statutory references are to the Code of Civil Procedure Code unless otherwise specified.

[6]Section 1286.2 permits vacation of an arbitration award if "(a) The award was procured by corruption, fraud or other undue means, [¶] (b) There was corruption in any of the arbitrators, [¶] (c) The rights of such party were substantially prejudiced by misconduct of a neutral

may not vacate an award even if it contains a legal or factual error on its face which results in substantial injustice. (*Ibid.*)

 As Marsch points out, statutory grounds to vacate an award exist whenever arbitrators exceed their powers. (§ 1286.2, subd. (d).) According to Marsch, because the Horizon agreement states that it is governed by California law, the Panel was required to give him the benefit of California's Corporations Code section 15038, subdivision (b)(2).[7] Marsch contends that in light of Williams's conduct, Corporations Code section 15038 gives him the right to possession and control of Horizon's assets. As we explain below, we reject Marsch's contention the award may be set aside because the Panel failed to give him the benefit of Corporations Code section 15038.

Even where application of a particular law or body of law is required by the parties' arbitration agreement, an arbitrator's failure to apply such a law is not in excess of an arbitrator's powers within the meaning of section 1286.2, subdivision (d). (See *Pacific Gas & Electric Co.* v. *Superior Court* (1993) 15 Cal.App.4th 576, 588-589 [19 Cal.Rptr.2d 295] [*PG&E*].) In *PG&E* the parties' agreement made arbitration subject to a statute which requires statements of decision from trial courts in ordinary civil cases. Given this qualification on arbitration, the losing party argued the arbitrators exceeded their powers in failing to issue a statement of decision which met the requirements of the statute. In rejecting the contention that a qualification as to the law governing an arbitration defines the scope of arbitrators' powers, the court stated: "The consideration that the submission agreement is qualified affords no persuasive reason to broaden the scope of judicial review. The fact that the parties restrict the arbitrator to a decision of the issues in the manner of a court of law does not mean that they expect that the decision is reviewable. The mode of decision and its reviewability are separate questions. [Citation.]" (*PG&E, supra,* 15 Cal.App.4th at p. 589.)

We believe *PG&E* is significant here because it demonstrates that in considering application of section 1286.2, we are not concerned about what law the parties have chosen. Rather we are required to determine whether the

arbitrator, [¶] (d) The arbitrators exceeded their powers and the award cannot be corrected without affecting the merits of the decision upon the controversy submitted, or [¶] (e) The rights of such party were substantially prejudiced by the refusal of the arbitrators to postpone the hearing upon sufficient cause being shown therefor or by the refusal of the arbitrators to hear evidence material to the controversy or by other conduct of the arbitrators contrary to the provisions of this title."

[7]Corporations Code section 15038, subdivision (b)(2), provides in pertinent part: "The partners who have not caused the dissolution wrongfully, if they all desire to continue the business in the same name, either by themselves or jointly with others, may do so, during the agreed term for the partnership and for that purpose may possess the partnership property."

parties have agreed that an arbitrator's mistake in either determining the appropriate law or applying it are reviewable in a court of law. (*PG&E, supra,* 15 Cal.App.4th at pp. 588-590.)

Here the arbitration provision of the agreement states the parties' disputes will be settled by "binding arbitration." As the court in *PG&E* found, a provision which requires binding arbitration "embodies the expectation that the arbitration award will be accorded a finality not given the judgment of a trial court and for that reason it must be accorded a different scope of judicial review. It is for this reason that the courts may not review a binding award for mere error of law or fact." (*PG&E, supra,* 15 Cal.App.4th at p. 588.) Given the expectation of limited review which is embodied in binding arbitration, ". . . the parties carry the burden of specifying that an unusual scope of judicial review is to be accorded an arbitration decision on a question of law." (*Id.* at p. 589.)

Here there is no explicit reference to a broadened scope of judicial review of an arbitration award. Rather, the parties' agreement simply states: "This agreement is executed and intended to be performed in the State of California, and the laws of this state shall govern its interpretation and effect." Even if we agreed that such a general choice of law provision required application of a particular statute, there is nothing in the provision which intimates that by making such a choice of law the parties also contemplated an extraordinary level of judicial review.

In sum then we reject Marsch's contention the arbitrators exceeded their powers in failing to apply Corporations Code section 15038, subdivision (b)(2), because, even if the arbitrators erred in failing to apply the statute, there is nothing in the parties' arbitration agreement which suggests that such an error of law is subject to expanded judicial review.

## II

■ However, our determination the arbitrators' award was not subject to any extraordinary judicial review does not end our inquiry. Arbitrators do not have the power to provide all the remedies which are available from the superior court. (See *Outdoor Services, Inc.* v. *Pabagold, Inc.* (1986) 185 Cal.App.3d 676, 685 [230 Cal.Rptr. 73]; see also *Luster* v. *Collins* (1993) 15 Cal.App.4th 1338, 1348 [19 Cal.Rptr.2d 215].)

Here, in appointing a receiver, the Panel acted without the benefit of any statutory authority empowering it to do so. The principal source of authority to appoint a receiver is section 564. Section 564 "is supplemented by a

number of additional code sections such as [Code of Civil Procedure section] 565 [on dissolution of corporation; see infra, § 351]; [Code of Civil Procedure section] 1422 [in escheat proceeding; see infra, § 353]; [Code of Civil Procedure] 3439.10 [creditor attacking fraudulent conveyance; see infra, § 342]; [Civil Code section] 4380 [in domestic relations cases; see infra, § 352]; Corp. [Code sections] 1801[, subd.] (c), 1803 [forfeiture an dissolution proceedings involving corporations; see infra, § 351]; Corp. [Code section] 15028 [charging order and receiver against debtor partner; see 6 Summary, Partnership, § 39]." (6 Witkin, Cal. Procedure (3d ed. 1985) Provisional Remedies, § 340, p. 288.) None of the statutes cited by Witkin permit an arbitration panel to appoint a receiver.[8]

Of additional significance is section 1281.8, subdivision (b), which permits a party to an arbitration to apply to the superior court for provisional remedies, including appointment of a receiver under section 564. Like the other statutes, section 1281.8 does not authorize an arbitrator to appoint a receiver.

In the absence of any statutory authorization, the question arises whether, by agreement, the parties may empower an arbitrator to appoint a receiver. (See *Luster* v. *Collins, supra,* 15 Cal.App.4th at pp. 1349-1349.) Although we have not located any case which deals directly with this question,[9] our review of a number of receivership cases convinces us that the power to appoint receivers is unique and cannot be extended to arbitrators in the absence of legislative action.

First we note repeated statements in the cases to the effect that "[a] receiver may not be appointed except in the classes of cases expressly set forth in the statutes." (6 Witkin, Cal. Procedure, Provisional Remedies, *supra,* § 340, citing *Miller* v. *Oliver* (1917) 174 Cal. 407, 410 [163 P. 355]; *Takeba* v. *Superior Court* (1919) 43 Cal.App. 469, 475 [185 P. 406] [*Takeba*]; *Turner* v. *Superior Court* (1977) 72 Cal.App.3d 804, 811 [140 Cal.Rptr. 475] [*Turner*]; see also *Barclays Bank of California* v. *Superior Court* (1977) 69 Cal.App.3d 593, 597 [137 Cal.Rptr. 743] [*Barclays Bank*].) We also note the contexts in which these statements were made. In *Miller* v. *Oliver* a

---

[8]Although section 564, subdivision (b)(8), permits appointment of a receiver "[i]n all other cases where receivers have heretofore been appointed by the usages of courts of equity," this provision has been given a sharply restricted interpretation and it may not be used to avoid a limitation imposed under another applicable subdivision of section 564. (*Dabney Oil Co.* v. *Providence Oil Co.* (1913) 22 Cal.App. 233, 237 [133 P. 1155].) More importantly we have not been able to identify any case, acting in law or equity, where a receiver was appointed by an arbitrator. Thus, this provision will not support the Panel's appointment of a receiver.

[9]In *Outdoor Services, Inc.* v. *Pabagold, Inc., supra,* 185 Cal.App.3d at page 685, the court noted that "[a]ttachment is relief unavailable through arbitration."

landowner alleged that a portion of its land was being occupied by a trespasser and that the occupation was interfering with its use of the land. The court found that although the owner might have the right to an injunction against the trespasser, the statutes did not permit appointment of a receiver as a remedy for the harm alleged.

In *Takeba*, *supra*, 43 Cal.App. at page 475, although the grounds relied upon by the trial court did not exist at the time the trial court appointed a receiver, shortly thereafter section 564 was amended to permit appointment on the grounds cited by the trial court. Nonetheless the Court of Appeal refused to give the amendment any retroactive application. (43 Cal.App. 475.)

In *Barclays Bank*, *supra*, 69 Cal.App.3d 593, and *Turner*, *supra*, 72 Cal.App.3d 804, the courts discussed former section 564, subdivision 7, which allowed appointment of receivers in cases "where receivers have heretofore been appointed by the usages of courts of equity."[10] The court in *Barclays Bank* found that courts of equity had been willing to appoint receivers where, in instruments creating liens, property owners and lienholders had agreed to such appointments. The court took pains to explain the parties' agreement did not establish the right to a receiver, but rather that the agreement only gave rise to the trial court's power to act under the statute. (69 Cal.App.3d at p. 600.) The court in *Turner* agreed and explained: "Although couched in terms of specific performance of a contractual provision, jurisdiction of the court to appoint a receiver under such circumstances is not derived from an agreement between the parties but rather from the omnibus statutory provision contained in subdivision 7 of section 564." (*Turner*, *supra*, 72 Cal.App.3d at p. 811.)

The care which these cases have taken in narrowly defining the circumstances under which a receiver may be appointed and consistently looking for statutory authorization for any such appointment is borne out of the grave impact such an appointment may have on the interests of the parties. As the court in *Takeba* explained in refusing to give retroactive effect to an expansion of section 564: "The power vested by the codes in superior courts to appoint receivers in actions pending before them involves in its effect more than a mere remedy. Of course, the power is in a sense remedial, but in its exercise the substantive rights of the parties are necessarily dealt with. When exercised, it means the taking of property by the court from one who may turn out to be the rightful owner thereof, and transferring it, *pro re nata*, to an agent of the court vested with power to handle and dispose of it according as the court may direct for the purposes of the action in which such agent or

---

[10]This power is now set forth in section 564, subdivision (b)(8).

receiver is appointed. There is no power vested in the courts more jealously guarded or safeguarded than this very power to appoint a receiver to take, for the court, the possession and control of the property of others, and this is because, as above suggested, the exercise of the power may mean the divesting the owner of his lawful right to remain in possession of his property. It is, therefore, obvious that, while the power to appoint a receiver is provisional and an ancillary remedy, its scope may go beyond that of a mere remedy and strike at the very substance of a person's property rights." (*Takeba, supra,* 43 Cal.App. at p. 475.)

Admittedly, the foregoing cases were decided not on the basis of what type of tribunal appointed a particular receiver, but because a party had either established or failed to establish statutory grounds for appointment of a receiver. However the importance of the trial court's role in supervising a receiver cannot be understated. "The receiver is but the hand of the court, to aid it in preserving and managing the property involved in the suit for the benefit of those to whom it may ultimately be determined to belong." (*Free Gold Mining Co.* v. *Spiers* (1901) 135 Cal. 130, 132 [67 P. 61]; see also *Lesser & Son* v. *Seymour* (1950) 35 Cal.2d 494, 499 [218 P.2d 536]; see also § 568.) "[A] receiver is an agent of the court, not of the parties, and the receivership estate consisting of property which is properly in his hands is under the control and continuous supervision of the court." (*Turner, supra,* 72 Cal.App.3d at p. 813.) Given the continuing nature of a receiver's duties and the court's supervision, any addition to the type of tribunals empowered to appoint and supervise receivers would represent a fairly profound change in our receivership law.

In sum, the precedents we have examined strongly suggest we are not at liberty to create or recognize a nonstatutory receiver, even where the parties have agreed to the appointment of one. Moreover, in light of the fact the Legislature has expressly provided in section 1281.8 that parties to an arbitration agreement may apply to the superior court for appointment of a receiver, there is very little practical need to exercise what, if any, liberty we may have in this area. Thus, we find the Panel exceeded its powers insofar as it appointed a receiver and to that extent the judgment confirming the Panel's award must be reversed.

For the guidance of the parties and the trial court on remand, we offer the following observations and instructions. The Panel found Marsch and Williams could no longer work together to complete the Horizon project, and the Horizon property was threatened with waste and diminution in value. Plainly these circumstances would support *appointment of a receiver under section*

564, subdivision (b)(1).[11] Accordingly, on remand the trial court should consider whether a receiver should be appointed as authorized by sections 1281.8, subdivision (b), and 564, subdivision (b)(1). An appointment of a receiver under such circumstances would, in our view, effect only a correction of the Panel's award within the meaning of sections 1286.2, subdivision (d), and 1286.6, subdivision (c). (See *Moncharsh, supra,* 3 Cal.4th at p. 13; see also *Luster* v. *Collins, supra,* 15 Cal.App.4th at pp. 1349-1350.) On the other hand if on remand the trial court does not believe appointment of a receiver is appropriate, the trial court must then determine whether the appointment of a receiver by the Panel can be deleted from the award without affecting the merits of the Panel's decision.[12] (§§ 1286.2, subd. (d), 1286.6, subd. (c).)

The judgment is affirmed in part and reversed in part with instructions to conduct further proceedings consistent with the views expressed in this opinion.

Kremer, P. J., and Froehlich, J., concurred.

A petition for a rehearing was denied April 14, 1994, and the opinion was modified to read as printed above. Appellants' petition for review by the Supreme Court was denied June 1, 1994.

---

[11]Section 564, subdivision (b)(1), permits the appointment of a receiver "In an action . . . between partners . . . on the application of the plaintiff, or of any party whose right to or interest in property . . . is in danger of being lost, removed or materially injured."

[12]Marsch also argues the trial court erred in failing to require the receiver to provide the oath and bond required by section 567. Although closely related to our holding that the Panel had no power to appoint a receiver, in light of that holding we have found the Panel's appointment of a receiver defective, this contention is now moot. Nonetheless, we note that any receiver appointed by the trial court on remand will be required to provide an oath and bond. (§ 567.)