[No. B185823. Second Dist., Div. Three. Aug. 25, 2006.]

JEFFREY BAIZE et al., Plaintiffs and Respondents, v.
THE EASTRIDGE COMPANIES, LLC, et al., Defendants and Appellants.

[No. B188433. Second Dist., Div. Three. Aug. 25, 2006.]

JEFFREY BAIZE et al., Plaintiffs and Respondents, v.
TECLA DEVELOPMENT CORPORATION et al., Defendants and
Appellants.

COUNSEL

Jennings, Strouss & Salmon, Michael R. Palumbo and Michael J. Farrell for Defendants and Appellants.

Law Offices of Lyle F. Greenberg, Lyle F. Greenberg and Michael M. Hernandez for Plaintiffs and Respondents.

## OPINION

**CROSKEY, J.**—In these consolidated proceedings, the parties to a wrongful termination action agreed to submit their dispute to binding arbitration, pursuant to an agreement by which the arbitrator was required to apply California law. The arbitrator issued an award in favor of the former employee, who then petitioned to confirm the award. The employer opposed, and moved to vacate the award, on the basis that the arbitrator had failed to *correctly* apply California law. The trial court concluded that it lacked jurisdiction to review the arbitrator's award for errors of law, and entered judgment in accordance with the arbitrator's award. The employer appeals. (No. B185823.) A contractual provision requiring that the arbitrator apply California law does not mandate a different conclusion. There is no indication in this record that the arbitrator was applying any law other than that of California. It is only claimed that he did not apply that law correctly. We therefore will affirm. An arbitrator's award is not reviewable for claimed errors of law.

After the trial court had entered judgment confirming the award, the former employee moved to amend the judgment to add as a defendant another corporation which was alleged to be an alter ego of defendant. The trial court reviewed the evidence and concluded, based on multiple factors, that the alleged alter ego was, in fact, an alter ego of defendant, and amended the judgment accordingly. Both corporations appeal (No. B188433), arguing only that the trial court erred in concluding that evidence of common ownership is insufficient, "standing alone," to establish the corporations are alter egos. As the trial court's ruling was based on many other factors, and the corporations fail to raise a proper substantial evidence challenge on appeal, we will affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

Defendant The Eastridge Companies, LLC (TEC) is wholly owned by Susan Eastridge and her husband. TEC's focus was on the development of so-called public/private projects, especially in the field of education. In July 2001, TEC hired Jeffrey Baize to work on some established TEC projects and

also to develop new projects.[1] TEC's business model often involved creating new legal entities for each project for which it was awarded a contract. As part of his employment agreement, Baize was to be given an ownership interest in any of the entities created for projects he developed.

Baize obtained for TEC a contract to develop a school (the Natomas project). Rather than create a new entity in which Baize had an ownership interest to handle the Natomas project, TEC assigned the project to an entity it had already created, TEC Natomas Development Corporation. The relationship between Baize and TEC deteriorated, and Baize was ultimately terminated from TEC's employ. He brought suit against TEC, seeking the compensation he was denied by not having been granted an ownership interest in the TEC Natomas Development Corporation. In addition to TEC and TEC Natomas Development Corporation, Baize also named as defendants three other TEC entities which Baize alleged were alter egos of TEC and responsible for any damages awarded to him: Natomas Eastridge Public Facilities Corporation; The Eastridge Companies Educational Facilities Group, Inc.; and Concord Eastridge, Inc. TEC brought a cross-complaint against Baize, alleging that he breached his employment agreement by failing to adequately perform his duties to TEC, among other causes of action.

On July 6, 2004, the parties stipulated to submit all claims to binding contractual arbitration. The parties' written arbitration agreement contained several clauses which are relevant to this appeal. They are: (1) "The Arbitrator shall have the authority of a sitting judge with respect to handling this matter and shall apply California law"; (2) "The Arbitrator shall apply the substantive law (and the law of remedies, if applicable) of the state of California, as applicable to the issues presented in this case. The Arbitrator is without jurisdiction to apply any different substantive law or the law of remedies"; and (3) "Notwithstanding any provision to the contrary that may be contained in the Rules[2] the Arbitrator shall be constrained by the rule of law and any arbitration award shall be based thereon."

An arbitration was held over 10 days in November 2004, resulting in an award in favor of Baize, supported by a 25-page written decision. The arbitrator concluded Baize was owed $894,479 plus prejudgment interest and costs, and further concluded that all related TEC entities were liable for Baize's damages on an alter ego theory.

---

[1] Baize's employment agreement with TEC included a term that a portion of his salary was to be paid to his corporation, Brookhurst Capital Corporation. References to Baize include his corporation.

[2] The "Rules" are not specifically defined in the arbitration agreement. However, three paragraphs above this provision, the arbitration agreement provides that the "California Rule of Evidence shall govern" the arbitration. We therefore assume this reference to "Rules" refers to the rules of evidence.

On June 7, 2005, Baize petitioned to confirm the arbitration award. TEC and its related entities (collectively the TEC entities) opposed the petition and moved to vacate the award. The TEC entities raised several arguments to contest the validity of the arbitration award, only one of which they pursue on appeal. The TEC entities took the position that the arbitrator exceeded his authority by failing to correctly apply controlling law. The TEC entities did not argue that the arbitrator *expressly* based his decision on non-California authority or equitable principles; instead, they argued that the arbitrator's decision was reviewable for errors of law because the arbitration agreement specifically provided that the arbitrator only had jurisdiction to apply California law. They believed that an *improper* application of California law was an act in excess of the arbitrator's jurisdiction and therefore subject to court review.

The trial court confirmed the award, on the basis that the court lacked authority to review the arbitrator's decision for errors of law. Judgment was entered in favor of Baize on June 29, 2005.

On August 3, 2005, Baize moved to amend the judgment to include an additional TEC entity, TECLA Development Corporation (TECLA) as a judgment debtor. In 2003 and 2004, TEC had been awarded development agreements for four school projects for the Los Angeles Unified School District (LAUSD). In July 2005, when Baize sent copies of his judgment to LAUSD for collection purposes, he learned that TEC had assigned those four contracts to TECLA when they were originally executed. Baize sought to amend the judgment to include TECLA on an alter ego theory. In addition to evidence of the assigned LAUSD contracts, Baize's motion relied on the following evidence: (1) the fact that TECLA was owned by the same individuals who owned other TEC entities; (2) the fact that TECLA had the same attorney as other TEC entities; (3) the fact that TECLA had the same address as other TEC entities; (4) the fact that TECLA had the same employees as other TEC entities; (5) deposition testimony (apparently admitted at the arbitration) demonstrating how money is funneled between TEC and its related entities; and (6) documents in which Concord Eastridge, Inc., a company found by the arbitrator to be a TEC alter ego, asserted that *it* was the company developing the four LAUSD schools. Baize also submitted evidence that the individuals who had controlled the litigation on behalf of the TEC entities were the same people who controlled TECLA.

On August 22, 2005, the TEC entities filed a notice of appeal from the judgment confirming the arbitration award. On August 30, 2005, the TEC entities and TECLA filed their joint opposition to Baize's motion to amend,

arguing that their appeal of the judgment stayed proceedings in the trial court and deprived the trial court of jurisdiction to hear the motion. They also opposed the motion on the merits, relying solely on a declaration of Susan Eastridge, asserting TECLA's independence from the other TEC entities.

The trial court granted the motion. In pertinent part, the trial court's order stated the following: "In considering all of the facts presented, the Court finds that TECLA is within the 'TEC family of entities' and, thus, should be added as a party Defendant. This determination is based on the following facts: (1) the President of TECLA is also the CEO of TEC; (2) the Vice-President of TECLA is also the VP of TEC; (3) the Secretary and Treasure[r] of TECLA is also the COO of TEC; (4) TECLA is wholly owned by Susan E[a]stridge; (5) TECLA and TEC are represented by the same attorneys; (6) TECLA operates out of the same offices used by TEC and [Concord Eastridge]; and (7) TECLA and TEC share the same employees. These facts, when taken together, support a finding that TECLA and TEC are one and the same. Accordingly, the Court finds that adding TECLA as a party defendant is proper. Towards this end, the Court adopts the findings of [the arbitrator] wherein he noted, in part: [']The evidence also shows that, within the TEC family of entities, accounting entries were made to shift revenue profits freely for the tax and corporate benefit of the entities and their owners. . . .' " (Citations omitted.) TECLA and the TEC entities filed a timely notice of appeal.

Baize filed timely motions for sanctions for filing frivolous appeals in both cases. Pursuant to California Rules of Court, rule 27, subdivision (e)(3), the court gave appellants written notice that it was considering the imposition of sanctions. Prior to oral argument, on the court's own motion, the two appeals were consolidated for the purposes of disposition in a single opinion.[3]

## ISSUES PRESENTED ON APPEAL

The TEC entities argue that the trial court erred in concluding it lacked jurisdiction to review the arbitrator's decision on the merits. Finding no error, we affirm. The TEC entities and TECLA argue that the trial court erred in concluding TECLA was an alter ego of the other TEC entities based solely on a finding of common ownership. As the trial court's decision was based on several other factors, which are not addressed by TECLA and the TEC entities in their opening brief on appeal, we affirm. In both cases, Baize seeks

---

[3] The TEC entities and TECLA are represented by Attorney Michael R. Palumbo, a member of the Arizona Bar. Attorney Palumbo filed an application to appear *pro hac vice* in the first appeal, which was granted. On the court's own motion, we grant Attorney Palumbo permission to appear *pro hac vice* in the second appeal.

sanctions for the pursuit of a frivolous appeal. As the issues raised in both appeals presented reasonably arguable or tenable legal questions, we decline to award sanctions.

## DISCUSSION

### 1. *The Judgment Confirming the Arbitration Award Was Proper— No. B185823*

■ Any discussion of the scope of a trial court's review of a private arbitration award must begin with *Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1 [10 Cal.Rptr.2d 183, 832 P.2d 899]. In *Moncharsh*, the California Supreme Court held that the decisions of arbitrators were not generally reviewable for errors of fact or law. (*Id.* at p. 6.) "[B]oth because it vindicates the intentions of the parties that the award be final, and because an arbitrator is not ordinarily constrained to decide according to the rule of law, it is the general rule that, 'The merits of the controversy between the parties are not subject to judicial review.' [Citations.] More specifically, courts will not review the validity of the arbitrator's reasoning. [Citations.] Further, a court may not review the sufficiency of the evidence supporting an arbitrator's award. [Citations.]" (*Id.* at p. 11.)

The question as to whether an arbitrator's decision was reviewable when the arbitrator *was* constrained to decide according to the rule of law was addressed the following year in *Pacific Gas & Electric Co. v. Superior Court* (1993) 15 Cal.App.4th 576 [19 Cal.Rptr.2d 295]. In that case, the unsuccessful party at arbitration argued that judicial review was appropriate because the arbitration agreement had limited the arbitrator to applying the law. The appellate court found this argument unpersuasive, concluding that judicial review was barred unless the arbitration agreement *specifically provided for expanded judicial review.* "[The unsuccessful party's] most far-reaching claim is that an arbitration award predicated upon a qualified submission, by which the arbitrator is directed to apply the law as would a court, is reviewable for errors of law [as an act in excess of the arbitrator's power[4]]. The argument simply put is that if the arbitrators are directed to apply the law and fail to do so they exceed their powers. The claim is not persuasive. It confuses the mode of decision with its finality." (15 Cal.App.4th at p. 587.) Even when the submission agreement directs the award be founded upon " 'dry law,' " the arbitrator does not exceed its powers merely by misstating the law. (*Id.* at p. 588.) While "[t]he parties to a

---

[4] Code of Civil Procedure section 1286.2 sets forth limited circumstances in which an arbitration award may be vacated, including when "[t]he arbitrators exceeded their powers . . . ."

contract may draft an arbitration provision so as to afford judicial review of questions of law," there is no such review unless they have expressly done so. (*Id.* at pp. 588–590.)

The following year, the same question was addressed in *Marsch v. Williams* (1994) 23 Cal.App.4th 238 [28 Cal.Rptr.2d 402], with the same result. In *Marsch*, the losing party at an arbitration contended that the award must be vacated based on the arbitrators' failure to correctly apply California law. The court disagreed, stating, "Even where application of a particular law or body of law is required by the parties' arbitration agreement, an arbitrator's failure to apply such a law is not in excess of an arbitrator's powers . . . ." (*Id.* at p. 244.) The court went on to explain that in considering whether an arbitrator's act is reviewable as an act in excess of power, "we are not concerned about what law the parties have chosen. Rather we are required to determine whether the parties have agreed that an arbitrator's mistake in either determining the appropriate law or applying it [is] reviewable in a court of law." (*Id.* at pp. 244–245.)

After *Pacific Gas & Electric* and *Marsch*, it is clear that the parties to an arbitration agreement could not render an arbitrator's decision reviewable for errors of law merely by providing in the agreement that the arbitrator must apply California law. Instead, the parties could obtain court review of the merits of the arbitrator's decision only if the arbitration agreement *expressly provided* that the arbitrator's errors of law were reviewable in court.[5]

█ *Pacific Gas & Electric* and *Marsch* control the result in this case. While the arbitration agreement expressly limited the arbitrator to the application of California law, it did not expressly expand the scope of judicial review. The parties in this case contracted only for a binding arbitration in which the arbitrator applied California law. This is what they received. There

---

[5] Recently *Crowell v. Downey Community Hospital Foundation* (2002) 95 Cal.App.4th 730 [115 Cal.Rptr.2d 810], held, over a strong dissent, that even when the parties to an arbitration *expressly agree* that the award is subject to judicial review for errors of fact and law, the award is not so reviewable. We have no need to express an opinion on the viability of the majority's conclusion in *Crowell* because it involved a contractual provision different than that before us.

We note that Supreme Court authority limiting judicial review of arbitration awards has been based on the premise that the parties could, in their arbitration agreement, set restrictions on the scope of the arbitrator's powers. (E.g., *Advanced Micro Devices, Inc. v. Intel Corp.* (1994) 9 Cal.4th 362, 375 [36 Cal.Rptr.2d 581, 885 P.2d 994] ["The powers of an arbitrator derive from, and are limited by, the agreement to arbitrate"]; *Moncharsh v. Heily & Blase, supra,* 3 Cal.4th at p. 8 [" ' "[t]he powers of an arbitrator are limited and circumscribed by the agreement or stipulation of submission" ' "].) The majority's opinion in *Crowell* appears to challenge this assumption, at least on the issue of the judicial reviewability of an arbitration award. If *Crowell* is correct, it would appear to raise a basis for a reconsideration of the rule of *Moncharsh*. As the Supreme Court has not yet spoken on this issue, we regard the question as an open one.

is no suggestion in the record that the arbitrator purported to apply any law other than that of California. It is simply claimed that he did not do so correctly. Like the *Pacific Gas & Electric* and *Marsch* courts, we cannot endorse such an end run around the clear limitations set out in *Moncharsh*. Therefore, the rule of *Moncharsh* applies, and the arbitrator's decision is not reviewable. The trial court was correct.

### 2. Appeal of the Order Amending the Judgment to Include TECLA–No. B188433

■ "The alter ego doctrine arises when a plaintiff comes into court claiming that an opposing party is using the corporate form unjustly and in derogation of the plaintiff's interests. [Citation.] In certain circumstances the court will disregard the corporate entity and will hold the individual shareholders liable for the actions of the corporation: 'As the separate personality of the corporation is a statutory privilege, it must be used for legitimate business purposes and must not be perverted. When it is abused it will be disregarded and the corporation looked at as a collection or association of individuals, so that the corporation will be liable for acts of the stockholders or the stockholders liable for acts done in the name of the corporation.' [Citation.]" (*Mesler v. Bragg Management Co.* (1985) 39 Cal.3d 290, 300 [216 Cal.Rptr. 443, 702 P.2d 601].)

"There is no litmus test to determine when the corporate veil will be pierced; rather the result will depend on the circumstances of each particular case. There are, nevertheless, two general requirements: '(1) that there be such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist and (2) that, if the acts are treated as those of the corporation alone, an inequitable result will follow.' [Citation.] And 'only a difference in wording is used in stating the same concept where the entity sought to be held liable is another corporation instead of an individual.' " (*Mesler v. Bragg Management Co., supra,* 39 Cal.3d at p. 300.)

■ If a trial court amends a judgment in order to add an additional judgment debtor on the basis of alter ego, due process requires a finding that the additional judgment debtor controlled the litigation in its capacity as alter ego, and was thus " 'virtually represented' " in the lawsuit. (*NEC Electronics Inc. v. Hurt* (1989) 208 Cal.App.3d 772, 778 [256 Cal.Rptr. 441].) In reviewing a finding of alter ego liability, we must consider whether the trial court's findings are supported by substantial evidence. (*Id.* at p. 777.)

On appeal, TECLA and the TEC entities do *not* argue that the trial court's findings were not supported by substantial evidence. Instead, they argue only that a finding of alter ego *based solely on common ownership* is insufficient.

Indeed, TECLA and the TEC entities state the "issue on appeal" is "[w]hether evidence of common ownership, officers and/or directors standing alone is sufficient evidence that a separate corporate entity is an 'alter ego' of a judgment debtor corporation so as to justify amending a judgment to subject that entity to liability." This characterization of the trial court's ruling and the issue on appeal appears no less than *five* additional times in their opening brief.[6]

As set forth above, the trial court's finding of alter ego was based on much more than "common ownership, officers and/or directors." The trial court expressly indicated its finding was also based on shared employees, the same offices, and the same attorneys. More importantly, the trial court adopted the arbitrator's finding that "within the TEC family of entities, accounting entries were made to shift revenue profits freely for the tax and corporate benefit of the entities and their owners." This was not simply a "rubber stamping" of the arbitrator's finding, but was based on excerpts from depositions that were submitted to the trial court regarding TEC's accounting practices. Additionally, the trial court had evidence before it that one of the TEC entities claimed that it was the developer on projects that TECLA was developing, further suggesting that TEC considered all of its related entities to be one and the same. With the exception of a short paragraph characterizing declarations submitted by Baize as "hearsay" or "unfounded," TEC and TECLA *completely ignore* all of the evidence submitted by Baize on which the trial court based its ruling.[7]

As TEC and TECLA do not raise a substantial evidence challenge, and instead manufacture an unsupportable argument by misstating the record on appeal and mischaracterizing the basis for the trial court's ruling, we conclude

---

[6] The five instances are: (1) "The only basis for the trial court's finding of alter ego liability was common ownership of corporate shares of TEC and TECLA. As a matter of law, common ownership of distinct and separate corporate entities is insufficient to impose alter ego liability." (2) "The only basis for the trial court's finding was that Susan Eastridge created separate different entities for various separate projects." (3) "[T]he trial court simply concluded that the participation of Susan Eastridge in the ownership and control of each corporate entity was sufficient to find alter ego liability." (4) "The fact that the same individual held shares in the ownership of the individual corporate entities is insufficient as a matter of law to impose alter ego liability . . . ." (5) "The trial court amended the judgment in this case to add TECLA . . . as a judgment debtor solely on the basis of shared ownership."

[7] Indeed, the TEC entities and TECLA state, "The only so-called evidence on the TECLA alter-ego issue submitted by Baize were unsupported characterizations by General Counsel for LAUSD, Baize's legal counsel and Mr. Baize's declaration." The TEC entities and TECLA ignore some *200 pages* of evidence submitted in support of the motion, including deposition excerpts, corporate records, and excerpts from proposals by Concord Eastridge which claim responsibility for the projects assigned to TECLA.

they have failed in their burden as appellants to present a basis for reversal.[8] The trial court's ruling on the postjudgment order was therefore correct.

### 3. Sanctions on Appeal Will Not Be Awarded

■ "When it appears to the reviewing court that the appeal was frivolous or taken solely for delay, it may add to the costs on appeal such damages as may be just." (Code Civ. Proc., § 907.) Similarly, California Rules of Court, rule 27(e)(1)(A) provides that the Court of Appeal may impose sanctions on a party or attorney for "taking a frivolous appeal or appealing solely to cause delay."

" '[A]n appeal should be held to be frivolous only when it is prosecuted for an improper motive—to harass the respondent or delay the effect of an adverse judgment—or when it indisputably has no merit—when any reasonable attorney would agree that the appeal is totally and completely without merit.' " (*Young v. Rosenthal* (1989) 212 Cal.App.3d 96, 131 [260 Cal.Rptr. 369], italics omitted.)

While we reject the arguments of the TEC entities and TECLA on appeal, we do not conclude that the appeals indisputably have no merit. As set forth above, the TEC entities' challenge to the merits of the arbitrator's decision is barred by the appellate decisions in *Pacific Gas & Electric* and *Marsch*. Nonetheless, our Supreme Court has not conclusively resolved the issue, and the issue of reviewability of arbitration awards may be ripe for Supreme Court reconsideration in light of recent appellate authority and the questions presented by this appeal. As such, an appeal on this issue does not indisputably lack merit. Similarly, in considering the second appeal, we did not address whether substantial evidence supports the trial court's decision because the TEC entities and TECLA failed to base their appeal on that argument; however, we conclude that such an argument could reasonably have been made. As such, neither appeal was totally and completely without merit, and we therefore will decline to impose sanctions.

---

[8] At oral argument on appeal, TECLA and the TEC entities argued the trial court's order should be reversed because the court made its finding of alter ego without conducting an evidentiary hearing. As this argument was similarly absent from their brief on appeal, we decline to address it.

## DISPOSITION

The judgment (No. B185823) and postjudgment order (No. B188433) amending the judgment are affirmed. Baize is to recover his costs on appeal from the TEC entities and TECLA. The motions for sanctions are denied.

Klein, P. J., and Kitching, J., concurred.

A petition for a rehearing was denied September 12, 2006, and the petition of all appellants for review by the Supreme Court was denied November 29, 2006, S147110.