[No. D016376. Fourth Dist., Div. One. May 18, 1993.]

ARNOLD LUSTER, Plaintiff and Respondent, v.
R. S. COLLINS, Defendant and Appellant.

COUNSEL

Nachand & Agnew and Charles D. Nachand for Defendant and Appellant.

Smith & Peltzer and Wesley M. Peltzer for Plaintiff and Respondent.

OPINION

**WIENER, Acting P. J.**—This case involves the ongoing dispute between two neighbors, plaintiff Arnold Luster and defendant R.S. Collins, over an easement 30 feet wide and about 1,200 feet long, located on the borders of their respective properties. The easement burdens Collins's property.

Collins appeals the judgment entered after Luster successfully moved to confirm three arbitration awards dated November 10, 1989, January 13, 1990, and April 26, 1991. Collins contends the awards must be vacated because the arbitrator exceeded the scope of his authority in several respects, the arbitrator was biased and Luster lacked standing at the third arbitration hearing.[1] For reasons set forth below we affirm in part and reverse in part, remanding for further proceedings consistent with this opinion.

### FACTUAL AND PROCEDURAL BACKGROUND

The easement which is the source of this litigation can generally be described as having three parts. The first part of the easement is paved; the second is a dirt road leading to a cul-de-sac; and the final part, also unimproved, ends at the northerly line of Luster's property.

In November 1987 Luster sued Collins, claiming Collins's placement of a barbed wire fence, trees, and irrigation equipment on the easement interfered with his ability to use the easement. With the help of a retired superior court judge, the parties agreed to settle the dispute. Their written settlement agreement reconfirmed Luster's right to use the easement and set forth rules governing the use of the easement, including the administration of gates

---

[1] The exclusive grounds for vacating an arbitration award are those listed in Code of Civil Procedure section 1286.2:

"(a) The award was procured by corruption, fraud or other undue means; [¶](b) There was corruption in any of the arbitrators; [¶] (c) The rights of such party were substantially prejudiced by misconduct of a neutral arbitrator; [¶] (d) The arbitrators exceeded their powers and the award cannot be corrected without affecting the merits of the decision upon the controversy submitted; or [¶] (e) The rights of such party were substantially prejudiced by the refusal of the arbitrators to postpone the hearing . . . or . . . to hear evidence material to the controversy or by other conduct of the arbitrators contrary to the provisions of this title."

All statutory references are to the Code of Civil Procedure unless otherwise specified.

located on the easement, the improvement of the unpaved portions of the easement, and the installation of fences bordering the easement.

The agreement further acknowledged the likelihood of future conflict and confirmed the parties' mutual desire to use arbitration as "a ready and inexpensive means for resolving" potential disagreements, specifying all disputes concerning "the road improvement, the removal and replacement of the fence, administration of locked gates, use of the easement and other related matters" would be submitted to binding arbitration. The arbitrator was granted broad authority to proceed "in accordance with procedures as determined by the arbitrator which shall be appropriate for the specific dispute."

The parties later stipulated each arbitration would "proceed . . . as authorized by the provisions of [Code of Civil Procedure] § 1280, et seq.", the judgment of the arbitrator would be binding and nonappealable, the arbitrator would have sole discretion as to the form of the judgment, and "[i]n addition to other powers authorized by statute, the Arbitrator would be empowered to grant equitable relief."

Less than two months later, an arbitration hearing was held to resolve disputes regarding the settlement agreement's meaning and how it should be implemented. As later modified,[2] the November 10, 1989, arbitration award clarified various provisions of the agreement, ordered Collins to pay Luster $2,323 for Collins's unreasonable interference with Luster's use of the easement, and made numerous injunctive orders including: (1) ordering the parties to refrain from harassing each other; (2) enjoining Collins from interfering with Luster's use and improvement of the unpaved portions of the easement; (3) ordering Collins to remove all trees and irrigation material located within certain boundaries of the surface area of the easement; and (4) ordering Collins to remove threatening signs located on the easement.

Pursuant to stipulation, in March 1991 the same arbitrator conducted a supplemental hearing, resulting in an April 26, 1991, arbitration award.[3] Of concern here, the arbitrator: (1) ordered Collins to remove all trees located on the easement below the cul-de-sac area and to pay $50 per day per tree for each day he failed to do so; (2) found Collins violated the previous award

---

[2]The parties identify the modification, dated January 13, 1990, as the "second" arbitration award.

[3]Collins initially requested this supplemental arbitration, claiming Luster had violated the arbitrator's previous award and that Luster's road construction was damaging portions of the easement. Luster agreed to submit the supplemental arbitration with "the understanding that [he] would be able to submit evidence that . . . Collins had failed to comply with the prior Arbitrator's awards . . . ."

by failing to remove signs at the entrance of the easement and ordered Collins to pay Luster $50 per day for each day Collins did not do so; (3) ordered Collins to keep the front gate locked from 9 p.m. to 6 a.m. every day; (4) found Collins failed to pay Luster the $2,323 and ordered him to do so; and (5) ordered Collins to pay to Luster's son-in-law Danilo Acevedo $500 for having harassed Acevedo. Shortly thereafter, a surveyor identified 24 trees within the easement, rendering Collins liable for $1,200 *per day* for each day the trees were not cut.

Both parties went to superior court—Collins petitioning to vacate the April 26th arbitration award and Luster petitioning to confirm and/or modify the awards.[4] After two hearings and oral argument, the court entered a judgment, denying the petition to vacate, granting the petition to confirm the awards and ordering the parties to return to the same arbitrator to determine several items of damages, including the amount of damages for failure to remove the trees. Collins appeals from this judgment.[5]

## DISCUSSION

## I.

### *Standard of Review*

 Our Supreme Court recently reiterated the strong public policy in favor of arbitration as a speedy and relatively inexpensive means of dispute resolution. (*Moncharsh* v. *Heily & Blase* (1992) 3 Cal.4th 1, 9 [10 Cal.Rptr.2d 183, 832 P.2d 899].) Because of this important public policy, arbitration awards are subject to an extremely narrow judicial review. We cannot review the merits of the controversy, the validity of the arbitrator's reasoning, or the sufficiency of the evidence supporting an arbitrator's award. (*Id.* at p. 11; *Morris* v. *Zuckerman* (1968) 69 Cal.2d 686, 691 [72

---

[4]When the parties filed their petitions, Collins had not yet cut down the trees. Luster therefore alleged Collins was obligated to pay him $52,800 ($1,200 per day) plus 10 percent interest. Although Collins does not support this assertion with a reference to the record, Collins says the fine was ultimately calculated to be $99,600, which is purportedly more than "the value of . . . Luster's affected property."

[5]The fact the court sent the matter back to the arbitrator for a determination of the amount of damages owed by Collins does not violate the final judgment rule and render the matter nonappealable. In the judgment, the court confirmed the substance of the entire arbitration award and referred the matter back solely for the arbitrator to calculate the amount of damages according to its previous findings. Since the court *confirmed* the award and Collins challenges the substance of the arbitrator's orders rather than matters relating to the calculation of damages, the judgment is appealable. (Compare *Long Beach Iron Works, Inc.* v. *International Molders etc. of North America* (1972) 26 Cal.App.3d 657, 659 [103 Cal.Rptr. 200] [order *refusing* to confirm award and instead referring matter back to arbitrator held to be intermediate and nonappealable].)

Cal.Rptr. 880, 446 P.2d 1000].) The exclusive grounds for vacating an arbitration award are those listed in section 1286.2. (See *ante*, fn. 1.) Of particular significance to this case is Collins's assertion that the arbitrator exceeded his powers under section 1286.2, subdivision (d). Absent proof of one of the five grounds contained in section 1286.2, a court may not vacate an award for legal or factual error even if the error clearly appears on the face of the award and it causes substantial injustice. (*Moncharsh, supra,* 3 Cal.4th at pp. 27-28.). "[E]very reasonable intendment must be indulged in favor of the award." (*Lauria* v. *Soriano* (1960) 180 Cal.App.2d 163, 168 [4 Cal.Rptr. 328].)

## II.

### Contentions Without Merit

We briefly discuss and reject certain of Collins's arguments. ■ First, there is no merit to Collins's claim the arbitrator exceeded his authority by failing to decide two issues submitted by Collins: Luster's obligation to install a larger culvert (a sewer or drain crossing under a road) and damages to Collins's irrigation piping. Our review of the award establishes the arbitrator considered and made findings as to each of those issues. In any event, an arbitrator's failure to render express findings on disputed questions does not invalidate the award where, as here, the award " 'serves to settle the entire controversy.' (*Sapp* v. *Barenfeld* [1949] 34 Cal.2d 515, 522-523 [212 P.2d 233].)" (*Rodrigues* v. *Keller* (1980) 113 Cal.App.3d 838 [170 Cal.Rptr. 349].)

Collins's contention that the arbitrator was biased is also meritless. ■ To support a claim of bias, a party must demonstrate the arbitrator had an interest in the subject matter of the arbitration or a preexisting business or social relationship with one of the parties which would color the arbitrator's judgment. (See *Banwait* v. *Hernandez* (1988) 205 Cal.App.3d 823, 826-829 [252 Cal.Rptr. 647].) Collins has failed to point to any evidence in the record showing the existence of such relationship in this case.

■ We also hold Luster has standing even though he transferred the property to his daughter Cindy Acevedo three months before the March 1991 arbitration hearing. When a party transfers an interest in the subject matter of a pending action, the proceeding may be continued in the name of the original party. (See Code Civ. Proc., § 385; see *Parker* v. *Superior Court of Riverside County* (1970) 9 Cal.App.3d 397, 400-401 [88 Cal.Rptr. 352, 67 A.L.R.3d 743].) In any event, by failing to raise the issue at the arbitration

hearing, Collins waived his right to assert error here. (See *United Food & Commercial Worker's Union* v. *Clougherty Packing Co.* (1984) 154 Cal.App.3d 282, 288 [201 Cal.Rptr. 183].)

### III.

### *Scope of Authority*

Section 1286.2, subdivision (d) requires a court vacate an arbitration award when the arbitrator exceeds his powers. ▮ Where, as here, parties stipulate to binding arbitration, the scope of an arbitrator's authority is determined by the arbitration agreement. (See *Cobler* v. *Stanley, Barber, Southard, Brown & Associates* (1990) 217 Cal.App.3d 518, 530 [265 Cal.Rptr. 868].) "[A]mbiguities in the scope of arbitration are resolved in favor of arbitrability." (*Social Services Union* v. *Alameda County Training & Employment Bd.* (1989) 207 Cal.App.3d 1458, 1464 [255 Cal.Rptr. 746].)

Collins contends the arbitrator acted outside the scope of his authority by ordering Collins to: (1) keep the entrance gate locked at night and remove trees from the area of the easement below the cul-de-sac; (2) pay $50 per day each day he failed to remove trees and signs from the easement; and (3) pay $500 for harassing Luster's son-in-law.

We examine these contentions separately, keeping in mind the parties' broad arbitration agreement and the limited scope of our review.

### A.

The parties specifically agreed they would arbitrate issues relating to the administration of the gates and the use and improvement of the easement. Thus, the parties contemplated the arbitrator would have the power to decide whether certain trees affecting the use and improvement of the easement should be removed and to determine the party responsible for ensuring the gates were kept locked at night.

▮ Collins nonetheless says the arbitrator exceeded his authority because the orders requiring him to remove the trees and lock the gates were inconsistent with provisions of the parties' settlement agreement. He maintains, for example, that under the settlement agreement it was Luster's obligation to remove the trees in the area below the cul-de-sac since the parties agreed "*Luster* at his sole expense" would cause this portion of the easement "to be graded and paved." (Italics added.) There is nothing in the parties' agreement, however, precluding the arbitrator from clarifying or

reconsidering issues previously decided. For example, if the facts showed that Collins had planted more trees since the parties' agreement, the arbitrator certainly had the authority to decide that Collins, not Luster, should be responsible for removing them.

More significantly, Collins's contention represents an attack on the merits of the arbitrator's decision. The fact the arbitrator may have decided in a manner inconsistent with the parties previous agreement establishes at most a factual or legal error in the arbitrator's conclusion. Even if we were to assume the arbitrator's determination was wrong, it was within his power to make the decision. (*Moncharsh* v. *Heily & Blase, supra,* 3 Cal.4th at p. 28; *Hacienda Hotel* v. *Culinary Workers Union* (1985) 175 Cal.App.3d 1127, 1133 [223 Cal.Rptr. 305].) "A contrary holding would permit the exception to swallow the rule of limited judicial review; a litigant could always contend the arbitrator erred and thus exceeded his powers." (*Moncharsh, supra,* 3 Cal.4th at p. 28.)

The arbitrator acted within the scope of the parties' arbitration agreement when he ordered Collins to remove trees in the easement and to ensure the entrance gate was locked at night.

## B.

The more troubling issue is Collins's challenge to the arbitrator's order requiring him to pay $50 per tree for each day he failed to cut down certain trees and $50 for each day he failed to remove signs from the easement.[6] Collins characterizes this monetary award as a contempt sanction and says the arbitrator had no authority to impose such sanction to enforce his orders.

---

[6]The relevant portions of the award read as follows:

"The Arbitrator finds that COLLINS, intentionally, and without justification, failed to obey the Arbitrator's original Findings and Judgment regarding sign removal. . . . The Arbitrator ordered that all signs which threatened legal action or referred to pending court matters be removed from the entrance area, and this COLLINS failed to do. Accordingly, COLLINS is ordered to pay to LUSTER, Fifty ($50.00) Dollars per day, for each day these signs exist, commencing May 1, 1991. Said sums are due the day they are assessed and shall include interest at the rate of Ten (10%) Percent per annum commencing May 1, 1991.

" . . . . . . . . . . . . . . . . . . .
"The parties shall retain the services of [a surveyor to] . . . mark . . . every tree . . . found . . . within [the boundaries of the] 30-foot road easement . . . .

" . . . . . . . . . . . . . . . . . . .
"[¶ ] . . . COLLINS shall be notified by first class mail that the trees have been so marked, and within five (5) days after the mailing of said notice, COLLINS shall commence the removal of all trees . . . . [¶] For each day COLLINS refuses to remove the trees which have been marked for removal, he shall pay the sum of Fifty ($50.00) Dollars, per day per tree to LUSTER, and any unpaid balance shall bear interest at the rate of Ten (10%) Percent per annum commencing thirty (30) days after the mailing of said notice."

1.

As expedient as it might be, we are unable to accept Luster's argument that the $50 per day award represents compensatory damages for expected future damages. The award's language makes clear the per diem award reflects the arbitrator's attempt to enforce his orders by imposing a sanction for future violations of the orders. For example, the award states that Collins failed to comply with previous orders concerning sign removal and "[a]c-cordingly, COLLINS is ordered to pay to LUSTER . . . $50.00 . . . per day for each day these signs exist . . ." (Italics added.) Likewise, the order states "for each day Collins *refuses* to remove the trees . . . he shall pay . . . $50 . . . per day per tree." (Italics added.) Moreover, since Luster claimed in his arbitration brief Collins's failure to cut down the trees (as well as other wrongful conduct) caused Luster to suffer a total of $3,500 in damages, there is no principled basis which will support a determination that the $1,200 per day award was intended to represent compensation for future losses.

At the time of the hearing the arbitrator's responsibility was to determine whether Collins had wrongfully placed trees on the easement and, if so, how those wrongful acts could be rectified. Consistent with his responsibility the arbitrator found Collins improperly burdened Luster's use of the easement and ordered removal of specific trees. This should have been the extent of his decision unless he was statutorily empowered or the parties agreed he could include self-executing provisions to insure its enforcement as part of the award.

2.

From a statutory perspective we see nothing in section 1280 et seq., which authorizes an arbitrator to include economic sanctions, such as those imposed here, as part of the award. Our review of the statutory framework reveals the Legislature was keenly aware the arbitrator should have sufficient power to deal with problems pertaining to discovery. Section 1283.05, subdivision (b) expressly provides the arbitrator can enforce discovery orders "by the imposition of the same terms, conditions, consequences, liabilities, sanctions, and penalties as can be or may be imposed in like circumstances in a civil action by a superior court . . . ." (See also § 1283.05, subd. (c).) There is no counterpart to this provision giving the arbitrator the statutory power to enforce the award.

The reason for this legislative omission is understandable in light of sections 1285 and 1287.4 allowing a party to petition the court to confirm an award which, if confirmed, results in the entry of judgment. Once entered

the judgment "has the same force and effect as, and is subject to all the provisions of law relating to, a judgment in a civil action; . . . and it may be enforced like any other judgment of the court in which it is entered." (§ 1287.4.)

### 3.

The means through which a judgment may lawfully be enforced is a discrete subject involving many considerations. In enacting enforcement mechanisms, the Legislature must balance the due process rights of the judgment debtor against the right of the judgment creditor to receive the benefits of the judgment, resolving these conflicting positions so that the public's confidence and respect for the judicial system will be enhanced.

The complexities associated with enforcing judgments prompted a study by the California Law Revision Commission which published its recommendations in 1980. (15 Cal. Law Revision Com. Rep. (1980) p. 2001.) The Legislature responded by enacting the Enforcement of Judgments Law, section 680.010, effective July 1, 1983. (Stats. 1982, ch. 1364, § 2, p. 5070.)

The many provisions of this inclusive law deal with enforcement problems in a myriad of situations including not only with the means of collecting a money judgment, but when and in what circumstance a receiver can be appointed (§§ 708.610-708.630) and, of particular interest here, the use of the court's power to punish for contempt (§ 717.010.) In light of these provisions and the Legislature's prodigious efforts in enacting a comprehensive statute dealing with the various methods to enforce judgments, the Legislature had no need to furnish an arbitrator additional authority for enforcement purposes postjudgment. Such authority would not only conflict with judicial power, but absent carefully prescribed procedures potentially interfere with the respective rights of the parties. We therefore hold the arbitrator lacked the statutory authority to order Collins to pay $50 daily for each tree and for the sign he failed to remove.

### 4.

Whether the parties stipulated the arbitrator should have the power to impose economic sanctions is a separate question. We are unaware of any legal impediment precluding the parties from agreeing the arbitrator could concurrently impose economic sanctions to effect performance of the award. There is nothing in the agreement, however, to this effect. The parties stipulated the arbitrator's powers were those prescribed in section 1280 et seq. They did not say the arbitrator would also have the power to enforce his

award. Our earlier discussion pointing out the enforcement mechanisms provided by statute following confirmation of the award as a judgment explains why the parties did not do so.

Because the arbitrator did not have the statutory power nor the parties' agreement to compel compliance with his orders by imposing monetary sanctions for Collins's future violations of the award, the arbitrator acted outside his authority in imposing $50 daily sanctions for future violations of his orders.

### 5.

■ We also decide the part of the arbitrator's order requiring Collins to pay $500 to son-in-law Danilo Acevedo for harassment exceeds the scope of the arbitrator's authority. Collins never agreed to arbitrate disputes with Acevedo. The arbitrator therefore could not bind Collins to an award involving a dispute which he had not agreed to arbitrate.

### DISPOSITION

The judgment is reversed with instructions to the trial court to set aside its order confirming the arbitration award ordering Collins to pay $50 per day per tree for each day Collins failed to remove the trees, $50 per day for each day Collins failed to remove the signs, and $500 to Danilo Acevedo. In all other respects the judgment is affirmed. The parties to bear their respective costs for this appeal.

Work, J., and Nares, J., concurred.

A petition for a rehearing was denied June 16, 1993, and respondent's petition for review by the Supreme Court was denied August 12, 1993.