Filed 1/15/14  P. v. Franklin CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | F064905 |
| Plaintiff and Respondent, | (Kings Super. Ct. No. 11CM7577) |
| v. | |
| TYRELL LOVELL FRANKLIN, | **OPINION** |
| Defendant and Appellant. | |

### THE COURT[*]

APPEAL from a judgment of the Superior Court of Kings County.  James T. Laporte, Judge.

Jennifer A. Mannix, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Stephen G. Herndon and Alice Su, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

[*] Before Levy, Acting P.J., Kane, J. and Poochigian, J.

# PROCEDURAL BACKGROUND

Defendant Tyrell Lovell Franklin was charged with the following crimes: assault by an inmate upon a correctional officer with force likely to cause great bodily injury (count 1 – Pen. Code,[1] § 4501); assaulting a correctional officer with a deadly weapon (count 2 – § 4501); battering a person not in custody by an inmate (count 3 – § 4501.5); battery resulting in serious bodily injury (count 4 – § 243, subd. (d)); and resisting an executive officer (count 5 – § 69.)  It was further alleged that defendant had suffered a prior serious felony conviction (§§ 667, subds. (a)(1), (b)-(i); 1170.12, subds. (a)-(d)), committed the offenses while confined in a state prison (§ 1170.1, subd. (c)).[2]  A great bodily injury enhancement (§ 12022.7, subd. (a)) was alleged as to all counts.

 On counts 1 and 2, the jury convicted defendant of the lesser-included offense of misdemeanor assault.  (§ 240.)  The jury found defendant guilty as charged on counts 3, 4 and 5.  The only great bodily injury enhancement the jury found true was the enhancement on count 4 – battery resulting in serious bodily injury.  (§ 243, subd. (d).)

The court sentenced defendant to an aggregate term of 16 years in prison.  The court refused defense counsel's request to stay execution of the punishment on count 4 under section 654.  The court stated the following at the sentencing hearing:

> "I think the test is elements with reference to 654.  And, also, with reference to the issue of whether there's, as they say, the question of whether the Count 4 and Count 5 have the same elements and, also, the same intent.  And I guess the argument is that one of them has a sentient requirement knowing that you are dealing with an executive officer, which is different from the battery with serious bodily injury count.…"

# TRIAL EVIDENCE

On July 12, 2011, David Castillo was working as a correctional officer at Corcoran State Prison.  That morning, Castillo was performing a security check of an

---

[1] All subsequent statutory references are to the Penal Code unless otherwise noted.

[2] Defendant admitted the prior conviction allegations.

area that included defendant's bunk. Castillo noticed that a locker in defendant's bunk area had been pulled away from the wall and was positioned in an unauthorized manner.**3** Castillo told defendant his locker was positioned in an unauthorized manner, and he was in trouble. Defendant "became very agitated," "quickly stood up," "and said, 'I don't give a f\*\*k what you write up.' " Castillo told defendant to quit using vulgar language and began to walk away. Defendant said, " 'Let's see what happens to you if you come up front and get your hair cut.' " Castillo took this as a threat because defendant worked as the "staff administration barber" and had access to scissors.

At the time, Castillo was the only officer in the dorm. Castillo ordered defendant to turn around so he could place him in restraints. Defendant replied, " 'For what?' " Castillo activated his personal alarm device, which sounds an audible alarm. Castillo told defendant to get down. Defendant did not comply, but rather turned around and faced away from Castillo. Castillo approached defendant and placed his left arm on defendant's left shoulder. Castillo told defendant to put his hands behind his back. Again, defendant did not comply. Defendant quickly turned around, grabbed hold of Castillo and tried to force him to the ground. Castillo grabbed hold of defendant's chest. Defendant began to push Castillo backwards, and Castillo resisted. Castillo felt defendant was stronger than he was. Defendant hit Castillo's head against a corner of a locker. Castillo felt extreme pain in his left ear area. Castillo felt and observed blood dripping from his wound. Castillo began pushing him backwards, and defendant continued trying to force Castillo to the ground. Castillo punched defendant in the face. Defendant fell to the ground, got back up and began swinging his arms in Castillo's direction "as if he were going to try to hit me." Defendant grabbed Castillo. Again,

---

**3** The prison's policies and procedures do not allow inmates to move furniture. Castillo "believe[d]" defendant had impermissibly moved furniture twice in the past. In those prior incidents, Castillo told defendant he could not pull the locker away from the wall because it obstructed the view of correctional officers, which posed a safety concern.

defendant tried to pull Castillo to the ground.  Castillo told defendant to "get down."

After Castillo issued the order four times, defendant finally complied.

## DISCUSSION

**I.  THE GREAT BODILY INJURY ENHANCEMENT MUST BE STRICKEN**

Defendant contends there was insufficient evidence to support the jury's true finding on the great bodily injury enhancement to count 4.  In the alternative, defendant posits that a conviction for violating of section 243, subdivision (d) may not be enhanced by a great bodily injury enhancement.  We agree with the latter contention and therefore strike the great bodily injury enhancement.

Section 12022.7, subdivision (a) provides for enhancing a defendant's sentence when he or she has willfully inflicted "great bodily injury" on a person, other than an accomplice, in the commission of a felony.  (§ 12022.7, subd. (a).)  That provision does not apply, however, when infliction of great bodily injury is an element of the underlying offense.  (§ 12022.7, subd. (g).)  Thus, the question presented by subdivision (g) is whether the "infliction of great bodily injury" (*ibid*) is an element of the offense described in section 243, subdivision (d).

" ' [S]erious bodily injury,' as used in section 243, is ' "essentially equivalent" ' to ' "great bodily injury," ' as used … in the section 12022.7 enhancement .…" (*People v. Wade* (2012) 204 Cal.App.4th 1142, 1149.)  Thus, in *People v. Hawkins* (1993) 15 Cal.App.4th 1373 (*Hawkins*), the Court of Appeal held that a great bodily injury enhancement under former section 12022.7 (added by Stats. 2010, ch. 711, § 5, eff. Jan. 1, 2012; amended by Stats. 2011, ch. 296, § 226)[4] could not be applied to a conviction for

---

[4] Former section 12022.7 is similar to its current iteration in all relevant respects. Former section 12022.7 provided:  " 'Any person who, with the intent to inflict such injury, personally inflicts great bodily injury on any person other than an accomplice in the commission or attempted commission of a felony shall, in addition and consecutive to the punishment prescribed for the felony or attempted felony of which he has been

violating section 243, subdivision (d). (See generally *Hawkins*, *supra*, 15 Cal.App.4th 1343.) The parties see no basis for distinguishing *Hawkins* and neither do we.

We will order the jury's true finding on the great bodily injury enhancement stricken.[5]

## II. DEFENDANT'S SENTENCES ON COUNTS 4 AND 5 DO NOT VIOLATE SECTION 654

Section 654, subdivision (a) states, in part:

> "An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision."

This provision prohibits multiple punishments for: (1) a single act; (2) a single omission; or (3) an indivisible course of conduct. (*People v. Deloza* (1998) 18 Cal.4th 585, 591.)

---

convicted, be punished by an additional term of three years, *unless infliction of great bodily injury is an element of the offense of which he is convicted*. [¶] As used in this section, great bodily injury means a significant or substantial injury.' (Italics added.)" (*Hawkins*, *supra*, 15 Cal.App.4th at p. 1375.) This language is now contained in section 12022.7's several subdivisions without any relevant changes. (See § 12022.7, subds. (a), (f)-(g).)

[5] Given this conclusion, we need not resolve defendant's additional claim that insufficient evidence supported the jury's true finding on the great bodily injury enhancement. However, we do note that Officer Castillo received multiple sutures as a result of the laceration to his ear area. "Abrasions, lacerations, and bruising can constitute great bodily injury. [Citation.]" (*People v. Jung* (1999) 71 Cal.App.4th 1036, 1042.) Great bodily injury findings have also been upheld where "the victim incurred multiple abrasions and lacerations[]" or where the victim "suffered bruising and swelling on her hands, arms and buttocks…." (*People v. Wolcott* (1983) 34 Cal.3d 92, 108.) In sum, " '[a] fine line can divide an injury from being significant or substantial from an injury that does not quite meet the description. Clearly, it is the trier of fact that must in most situations make the determination.' [Citations.]" (*People v. Escobar* (1992) 3 Cal.4th 740, 752.) Here, there was sufficient evidence of great bodily injury.

Because defendant was sentenced to separate terms on counts 4 and 5, we assume the court found that defendant committed the two crimes pursuant to separate objectives. (See *People v. Islas* (2012) 210 Cal.App.4th 116, 129.)[6] We review a finding of separate objectives for substantial evidence. (*Ibid.*)

We conclude the evidence supports a finding that the physical acts at issue were done pursuant to separate objectives.

First, there was evidence that defendant's act of threatening Castillo before the battery was an attempt to deter Castillo from writing defendant up for the improper locker positioning. Castillo told defendant his locker was positioned in an unauthorized manner and that he would be written up for the infraction. Defendant "became very agitated," "quickly stood up," "and said, 'I don't give a f**k what you write up.' " Castillo told defendant to quit using vulgar language and began to walk away. Defendant said, " 'Let's see what happens to you if you come up front and get your hair cut.' " The evidence suggests this threat was meant to either deter Castillo from writing defendant up for the improper locker positioning, or to threaten retaliation if Castillo followed through.

In contrast to defendant's objective in threatening Castillo, defendant's apparent objective in battering Castillo was to resist and frustrate Castillo's attempts to restrain him.[7] After defendant threatened Castillo, but before any violence occurred, Castillo told

[6] The thrust of the court's ruling on the section 654 issue focused on the elements of the two offenses. It is not entirely clear whether the court also based its ruling on a finding that defendant committed the crime pursuant to separate objectives. Regardless, the content of the court's explanation for its ruling in this regard is not dispositive. Even if the court did not expressly articulate a finding of separate intents, we would infer one nonetheless. "When a trial court sentences a defendant to separate terms without making an express finding the defendant entertained separate objectives, the trial court is deemed to have made an implied finding each offense had a separate objective. [Citation.]" (*People v. Islas*, *supra*, 210 Cal.App.4th at p. 129.)

[7] The Attorney General similarly argues that defendant acted pursuant to separate objectives. But, she identifies different objectives than we do here. She submits "there was evidence that the battery causing serious bodily injury was the result of anger or

6.

defendant to get down. Defendant did not comply, but rather turned around and faced away from Castillo. Castillo approached defendant and placed his left arm on defendant's left shoulder. Castillo told defendant to put his hands behind his back. Again, defendant did not comply. Defendant quickly turned around, grabbed hold of Castillo and tried to force him to the ground.

Thus, the evidence supports the court's finding that defendant acted pursuant to separate objectives. Specifically, the evidence supports an inference that the battery was an act of physical defiance in response to Castillo's attempts to restrain defendant. The threatening verbal defiance that preceded the battery was apparently done in retaliation for Castillo indicating that he would write defendant up for the improper locker positioning. Because there is substantial evidence of separate objectives, we will not disturb the trial court's ruling on the section 654 issue.

## DISPOSITION

The jury's true finding on the great bodily injury enhancement attached to count 4 is stricken. The matter is remanded for resentencing. In all other respects, the judgment is affirmed.

---

frustration that Officer Castillo was going to write him up for the locker repositioning, whereas the resisting an executive officer was a result of the subsequent struggle to get appellant subdued after he had been knocked down." The nature of the objectives is irrelevant so long as they are separate and not merely incidental to one another.