Filed 9/28/20  Kelly v. Charles Schwab & Co. CA2/6

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SIX

| | |
|---|---|
| MICHAEL PATRICK KELLY, <br><br> Plaintiff and Appellant, <br><br> v. <br><br> CHARLES SCHWAB & CO., INC. <br><br> Defendant and Respondent. | 2d Civil No. B265826 <br> (Super. Ct. No. 56-2013-00435648-CU-BC-VTA) <br> (Ventura County) |

Michael Patrick Kelly appeals from the judgment confirming a binding arbitration award against him.  (Code Civ. Proc., §§ 904.1, subd. (a)(1), 1294, subd. (d).)  Kelly contends:  (1) Charles Schwab & Co., Inc. (Schwab) procured the arbitration award by fraud, and (2) the arbitrator exceeded his powers by ordering Kelly to pay monetary sanctions.  We reverse the sanctions award and otherwise affirm.

FACTUAL AND PROCEDURAL BACKGROUND

Kelly was an independent investment advisor.  He entered into an Investment Manager Service Agreement (IMSA)

with Schwab to conduct trades for Kelly's clients.[1]

The IMSA provided: "Schwab recognizes that you and your Clients have selected Schwab as the custodian and Schwab acknowledges the primacy of your relationship with your Clients. . . . [¶] Schwab has no intent to communicate with your Clients except as may be required by law, rule or regulation, as for example brokerage confirmations and account statements, and as Schwab reasonably determines necessary." It further provided, "Either party may terminate this Agreement at any time by giving written notice to the other."

Schwab also required Kelly's clients to enter separate brokerage account agreements authorizing Schwab to execute their transactions as the broker-dealer. The agreements stated in part, "In the event Schwab elects to terminate the contract with your named advisor, we will notify you as soon as possible."

Schwab became concerned about the signature of one of Kelly's clients authorizing the transfer of funds. Schwab contacted Kelly and requested that the client contact Schwab to verify their signature or submit a new form. Kelly telephoned Schwab and impersonated the client. Kelly was combative, angry, used foul language, and refused to acknowledge the policy requiring clear and direct client authorization of money transfers.

After conducting an investigation, Schwab notified Kelly it was terminating the agreement effective 77 days later. The same day, it mailed notices to Kelly's clients advising them of the termination.

Kelly filed a civil complaint against Schwab alleging

---

[1] At some point, Kelly assigned his rights and obligations to Airgead Clan, LLC (Airgead), of which Kelly was the sole or principal owner.

causes of action for breach of contract, breach of implied covenant of good faith and fair dealing, defamation, intentional interference with contractual relations, intentional interference with prospective contractual relations, abuse of process, and intentional infliction of emotional distress. He alleged the notices to clients violated the IMSA and implied he committed a crime. He also alleged that large and small account holders were treated differently, and that notices were not sent to clients of large account holders when fraud was suspected. He alleged that Schwab intended to take over his clients' accounts.

The IMSA provided for arbitration. The court granted Schwab's motion to compel arbitration. Neither Kelly nor Airgead appeared at the arbitration hearing. At the hearing, Michelle Thetfort, Schwab's Vice President of Advisory Services Compliance, testified that its procedures for investigating and terminating advisors were the same irrespective of the size or profitability of the accounts involved. There was evidence that of the 82 accounts Kelly managed at Schwab, all but one followed Kelly to another custodian.

The arbitrator issued an award for Schwab. He found the notices to clients were "reasonably necessary in order to protect the interests of the end clients, to provide transparency to the clients and to avoid subsequent client claims and regulatory risk." The award ordered Kelly and Airgead to pay $2,600 for administrative, filing, and case service fees of the arbitrator, and $33,260 for arbitrator's fees and expenses. The arbitrator found that Kelly's act of posting videos on YouTube that disclosed discovery he received from Schwab pursuant to a confidentiality agreement was "inexcusable and willful." Kelly was ordered to remove the videos and pay Schwab sanctions of

3

$300 for each day that passed before the videos were removed after the order.

The trial court denied Kelly's request to vacate the arbitration award and entered judgment "in conformity with" the arbitration award. It added prejudgment interest of $4,202.96. Because the parties had presented conflicting information regarding whether confidential information had been removed from YouTube, the trial court declined to order sanctions without an evidentiary hearing. The judgment stated, "Issue of sanctions is reserved."

DISCUSSION

The exclusive grounds for vacating an arbitration award are provided in Code of Civil Procedure section 1286.2. (*Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1, 28, 33.) "[A]n arbitrator's decision [is not generally reviewable] for errors of fact or law" (*id.* at p. 11), "whether or not such error appears on the face of the award and causes substantial injustice to the parties" (*id.* at p. 6).

On appeal, findings of fact by the trial court in confirming an arbitration award are reviewed for substantial evidence. (*Cooper v. Lavely & Singer Professional Corp.* (2014) 230 Cal.App.4th 1, 11-12.) But our review of the trial court's determination whether the arbitrator's powers were exceeded is de novo. (*Advanced Micro Devices, Inc. v. Intel Corp.* (1994) 9 Cal.4th 362, 376, fn. 9.)

*Fraud*

Kelly first claims that the arbitration award was procured through fraud and should be vacated. This claim lacks merit.

The court shall vacate an arbitration award if "[t]he

4

award was procured by corruption, fraud or other undue means." (Code Civ. Proc., § 1286.2, subd. (a)(1).) An arbitration award must be vacated for fraud if (1) the movant "'establish[es] the fraud by clear and convincing evidence,'" (2) the fraud was not "'discoverable upon the exercise of due diligence prior to or during the arbitration,'" and (3) "'the fraud materially related to an issue in the arbitration. [Citations.]' [Citations.]" (*Pour Le Bebe, Inc. v. Guess? Inc.* (2003) 112 Cal.App.4th 810, 830.) Kelly has not established that fraud occurred here.

Kelly's petition to vacate the award and his objection to the petition for entry of judgment included charts, excerpts from depositions, and statements that he did not present as competent evidence at the arbitration hearing and that he claims show that Schwab committed "perjury" and "a fraud on the court." That Kelly offered contradictory evidence after the arbitration hearing does not, however, establish perjury or fraud. In addition to the evidentiary defects in Kelly's presentation, the court "may not review the sufficiency of the evidence supporting an arbitrator's award." (*Moncharsh v. Heily & Blase*, *supra*, 3 Cal.4th at p. 11.)[2]

Kelly contends the arbitrator incorrectly concluded that the law required Schwab to notify clients of his termination. But the award did not so state, and the IMSA did not limit

_____

[2] We deny Kelly's request for judicial notice of records in *Securities and Exchange Commission v. Charles Schwab & Co., Inc.* (N.D.Cal., 2018, 18-cv-03942), and our file in *People v. Kelly* (Dec. 3, 2009, B296697) [nonpub. opn.]. There are no exceptional circumstances here to warrant judicial notice of records or evidence that were not before the trial court. (*Vons Companies, Inc. v. Seabest Foods, Inc.* (1996) 14 Cal.4th 434, 444, fn. 3.)

Schwab to notifications "required by law." Instead, the IMSA stated, "Schwab has no intent to communicate with your Clients except as may be required by law, rule or regulation, as for example brokerage confirmations and account statements, *and as Schwab reasonably determines necessary*." (Italics added.) The arbitrator reasonably interpreted this provision to allow notification to Kelly's clients of the impending termination because Schwab deemed it reasonably necessary. Notification was also required by Schwab's separate agreements with each of Kelly's clients.

Kelly also asserts the award was fraudulent because Schwab failed to provide discovery. But the evidence does not establish that Schwab failed to provide any required discovery, or that the award was procured by a failure to provide discovery.

Kelly's reliance on *Baker Marquart LLP v. Kantor* (2018) 22 Cal.App.5th 729, is misplaced. There, an ex parte communication with the arbitrators procured an award by "'undue means'" by "''preventing a fair adversary hearing, the aggrieved party being deliberately kept in ignorance of the action or proceeding, or in some other way fraudulently prevented from presenting his claim or defense.''' [Citation.]" (*Id.* at p. 739.) Here, Kelly had the opportunity to hear and see all the evidence presented at the arbitration hearing, but he chose not to attend.

*Sanctions*

Kelly next argues that the order for daily sanctions following entry of the award until he complied with the award exceeded the arbitrator's powers. We agree.

The court shall vacate an arbitration award if "[t]he arbitrators exceeded their powers and the award cannot be corrected without affecting the merits of the decision upon the

controversy submitted." (Code Civ. Proc., § 1286.2, subd. (a)(4).)

Schwab incorrectly contends that Kelly raised this issue for the first time on appeal. In his objection to motion for entry of judgment, Kelly asserted the arbitrator had no power to sanction him for his conduct after termination of the arbitration.

Schwab next contends this issue is not ripe for appeal because there was no final judgment. We disagree. "If an award is confirmed, judgment shall be entered in conformity therewith." (Code Civ. Proc., § 1287.4.) The record establishes a final judgment was entered. "'A judgment is final "when it terminates the litigation between the parties on the merits of the case and leaves nothing to be done but to enforce by execution what has been determined."' [Citations.]" (*Sullivan v. Delta Air Lines, Inc.* (1997) 15 Cal.4th 288, 304.) We interpret the court's order here as a final appealable judgment incorporating the sanctions award of $300 for every day certain videos are not removed. (See *Carole Ring & Associates v. Nicastro* (2001) 87 Cal.App.4th 253, 259 [judgment confirming award incorporated arbitrator's decision denying attorney fees].) The judgment is appealable even though it does not determine whether such violations occurred or calculate a dollar amount. (*Luster v. Collins* (1993) 15 Cal.App.4th 1338, 1344, fn. 5 (*Luster*) [judgment confirming arbitration award and remanding back to arbitrator to calculate damages was appealable judgment].)

The arbitrator exceeded his authority by awarding sanctions of $300 for every day Kelly failed to remove the videos from YouTube. This case is like *Luster*, where the arbitrator exceeded his authority in an easement dispute by imposing sanctions of $50 for each day certain trees or signs were not removed. (*Luster*, *supra*, 15 Cal.App.4th at pp. 1349-1350.) The

7

court held that in light of the complexity of the law regarding enforcement of judgments, the Legislature did not give arbitrators the authority to provide for enforcement of judgments. (*Id*. at p. 1349.)

*Luster* remains good law. It was not abrogated by *Advanced Micro Devices, Inc. v. Intel Corp.*, *supra*, 9 Cal.4th at page 367, or *Emerald Aero, LLC v. Kaplan* (2017) 9 Cal.App.5th 1125, 1138-1139. Those cases authorize arbitrators to fashion remedies rationally related to the subject matter of the contract and the breach. In *Advanced Micro Devices*, the court upheld an award of a license to use intellectual property. In *Emerald Aero*, the court reversed an award of punitive damages because the arbitrator exceeded his authority by making the award without giving adequate notice to the adverse party. Neither case authorized monetary sanctions for future failures to comply with the award. Cases decided after *Advanced Micro Devices* cite it along with *Luster* as examples of limitations on arbitrators' authority. (*O'Flaherty v. Belgum* (2004) 115 Cal.App.4th 1044, 1056; *Jordan v. Department of Motor Vehicles* (2002) 100 Cal.App.4th 431, 443.)

Schwab states it is "willing to waive its right to recover sanctions and will not seek to enforce that portion of this award." But the obligation to pay sanctions would remain a part of the public record that might have consequences to Kelly. In addition, an unaccepted settlement offer does not render a case moot. (*Campbell-Ewald Co. v. Gomez* (2016) 577 U.S. ___ [136 S.Ct. 663, 670].) Accordingly, we direct the trial court to set aside that part of its order adopting the sanctions order.

DISPOSITION

The judgment is reversed in part. The trial court

8

shall set aside that portion of its judgment confirming the award of sanctions of $300 per day.  In all other respects, the judgment is affirmed.  The parties shall each bear their own costs on appeal.

<u>NOT TO BE PUBLISHED.</u>

TANGEMAN, J.

We concur:

GILBERT, P. J.

YEGAN, J.

9

Rocky J. Baio, Judge

Superior Court County of Ventura

_____

Michael Patrick Kelly, in pro. per., for Plaintiff and Appellant.

Steptoe & Johnson, Robin Crowther and Kelly Champ for Defendant and Respondent.