Filed 8/23/19 Certified for Publication 9/13/19 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| CITY OF DANA POINT, | |
| Plaintiff and Respondent, | G056741 |
| v. | (Super. Ct. No. 30-2017-00904169) |
| NEW METHOD WELLNESS, INC., et al., | O P I N I O N |
| Defendants and Appellants. | |

Appeal from a judgment of the Superior Court of Orange County, Glenn R. Salter, Judge.  Affirmed.

Garner Health Law and Craig B. Garner for Defendants and Appellants.

Rutan & Tucker and Robert O. Owen for Plaintiff and Respondent.

\*          \*          \*

Defendant New Method Wellness, Inc. (New Method), runs a drug treatment facility and houses some of its patients in three residences (the Properties) located in residential zones in the City of Dana Point (Dana Point). Dana Point brought this nuisance action on the ground that this use of the Properties is not authorized by the relevant zoning ordinance. The court found the homes were being used as part of the drug treatment facility and issued an injunction.

The evidence showed the Properties are advertised as part of the drug treatment facility, the residents' lives are highly regulated, defendant NMW Beds, LLC (NMW Beds) imposes 24-hour supervision, provides transportation to defendant New Method's drug treatment facility, and recovery treatments are offered at the Properties. We hold this evidence supports the court's finding that this use of the Properties is not authorized under Dana Point's relevant zoning ordinance, nor under any exception to the zoning ordinance, and thus it constituted a nuisance per se. Defendants raise several legal challenges to the injunction, none of which we find persuasive. We affirm.

FACTS

The three Properties are located in Dana Point in neighborhoods zoned for residential use only. All three are owned by NMW Beds. Defendant New Method operates a substance abuse treatment center in the City of San Juan Capistrano. New Method is licensed to offer mental health services and substance abuse services at its headquarters, as well as at residential treatment services at other locations in Orange County, but not at the Properties. NMW Beds and New Method are owned by the same four individuals in equal shares. The Properties are operated under the same brand name as the treatment center, "New Method Wellness."

New Method advertises its treatment center on a Web site that portrays the Properties as part of the treatment center's residential offerings. For example, New Method's Web site boasts that it has "six beautifully furnished homes sprinkled over the neighboring beach cities around Capistrano Beach, San Clemente and Pacific Coast Highway." Included among those six homes are the Properties. The Web site also advertises, "The patient will live on site in one of our beautiful sober living homes and [*sic*] supply transportation, grocery carts and optional activities on the weekends and evenings." This also refers to the Properties. The Web site also states that treatment services are provided "on-site" and "in all of our homes," though the chief executive officer of both entities, David Blum, testified that this was inaccurate.

Blum described the Properties as sober living homes. Residents at the Properties are subject to a six-page code of conduct that was drafted by Blum and others. The rules cover topics such as prohibitions on pets and pornographic materials, requirements for signing in and out when coming and going from the house, a "comfortable and conservative" dress code, a requirement to be working or seeking a job during the day, random drug testing, mandatory 12-step meetings, chores, an open-door policy for bedrooms, and the consequences for rule violations (including expulsion). These rules are non-negotiable. Each home is managed by staff 24 hours per day. Although not all of the residents at the Properties are clients of New Method, the majority are, and NMW Beds provides transportation to New Method for those clients (but not to other treatment centers).

Dana Point filed the underlying complaint seeking injunctive relief to abate a nuisance pursuant to the Dana Point Municipal Code (Municipal Code). In particular, Dana Point alleged that the Properties were being operated as unlicensed drug treatment centers in violation of Dana Point's zoning ordinance. Dana Point sought an injunction preventing defendants from "unlawfully operating any business on the Properties."

Rather than hold a testimonial hearing, the parties stipulated to the court holding a bench trial on the papers: a set of exhibits, stipulated facts, trial briefs, and deposition testimony. The court found in favor of Dana Point. It found that New Method and NMW Beds were operating as a single entity and thus disregarded the corporate form. Since the Properties were part of New Method's operation, the court concluded they must be licensed. And since it was undisputed that the Properties were not licensed, their use was not authorized under the Municipal Code and thus constituted a nuisance subject to abatement. The court permanently enjoined defendants "from operating the Properties as residential components of an alcoholism and drug abuse treatment facility without obtaining a valid license from the State of California pursuant to Health & Safety Code [section] 11834.30 and [California Code of Regulations, title 9, section] 10508." Defendants timely appealed.

DISCUSSION

This appeal essentially boils down to one issue: Were the Properties operating as part of the treatment center? The court found they were, and below we conclude the court's finding is supported by substantial evidence. From that finding, it follows almost ineluctably that Dana Point was entitled to an injunction: operation of a drug treatment facility is not a permitted use under Dana Point's zoning ordinance; it is, therefore, a nuisance per se. We say "almost" because Health and Safety Code section 11834.23 preempts local zoning ordinances for drug abuse recovery facilities that are

4

both licensed and serve six or fewer people. The Properties meet neither of those conditions, however, and thus the injunction properly issued. After reaching this conclusion below, we address an assortment of additional legal doctrines defendants raise to challenge the injunction, none of which pose any obstacle to its enforcement.

We begin with the law of nuisance. ""[T]he legislature has the power to declare certain uses of property a nuisance and such use thereupon becomes a nuisance *per se*." [Citation.] . . . Nuisances *per se* are so regarded because no proof is required, beyond the actual fact of their existence, to establish the nuisance."" (*City of Costa Mesa v. Soffer* (1992) 11 Cal.App.4th 378, 382.) "By ordinance the city legislative body may declare what constitutes a nuisance." (Gov. Code, § 38771.)

Here, Dana Point has declared any non-permitted use in a residential zone a nuisance. Municipal Code section 9.09.020, subdivision (b), which enumerates permitted uses in a residential zone, declares, "Any use not expressly allowed is prohibited." Nowhere does the residential zoning ordinance permit the operation of a drug treatment facility in a residential zone. Thus, such use was prohibited. Municipal Code section 1.01.240 declares that any condition that violates a provision of the Municipal Code "shall be deemed a public nuisance" subject to abatement. Thus, the operation of a drug treatment facility in a residential zone is a nuisance per se. And an injunction may issue against a nuisance per se without proof of an irreparable injury. (*City of Monterey v. Carrnshimba* (2013) 215 Cal.App.4th 1068, 1086.) The question, therefore, is simply whether substantial evidence supports the court's finding that the Properties were being operated as part of a drug treatment facility.

We find the evidence amply support's the court's conclusion. New Wellness's Web site clearly holds the Properties out as part of the operation of the treatment center. This is undisputed. It markets the treatment center, in part, by appealing to the features of the Properties. It is further undisputed that the Properties operate under the same brand name as the treatment center. The residents are subject to

5

intense supervision and regulation of their lives. Transportation is provided from the Properties to the New Method treatment center (and to no others). And, according to the Web site, New Method implements services *at* the Properties. This fact was disputed— Blum denied it. But in a substantial evidence review, we resolve all conflicts in the evidence in favor of the judgment.

Finding the Properties to be part of New Method's drug treatment facility is consistent with the governing regulatory framework. California Code of Regulations, title 9, section 10508 specifically contemplates that a "licensee may provide housing and alcoholism or drug abuse recovery or treatment services in the same building or the licensee may house residents in one building and provide services in another building," provided that the residential buildings are either covered by the treatment facility's license or secure independent licenses. And that is exactly how the court found New Method was operating: treatment primarily in one facility, housing in another, but all under the same program. The evidence supported that finding.

The only evidence that might suggest the Properties are not part of the operation of the drug treatment facility is that the Properties are owned and operated by a different corporate entity, NMW Beds. But that fact is irrelevant. The question in this case—a *nuisance* action—is how the Properties are being used. Not who owns them. And it is clear they are being used as part of the operation of the treatment center.

To the extent the corporate distinction matters, the court employed the single-enterprise doctrine to disregard the corporate form, a decision that was both within its discretion and supported by substantial evidence. "[U]nder the single-enterprise rule, liability can be found between sister companies. The theory has been described as follows: 'In effect what happens is that the court, for sufficient reason, has determined that though there are two or more personalities, there is but one enterprise; and that this enterprise has been so handled that it should respond, as a whole, for the debts of certain component elements of it. The court thus has constructed for purposes of imposing

6

liability an entity unknown to any secretary of state comprising assets and liabilities of two or more legal personalities; endowed that entity with the assets of both, and charged it with the liabilities of one or both.'" (*Las Palmas Associates v. Las Palmas Center Associates* (1991) 235 Cal.App.3d 1220, 1249-1250 (*Las Palmas*).) The doctrine applies where one of the corporations "'"is so organized and controlled, and its affairs are so conducted, as to make it merely an *instrumentality, agency, conduit, or adjunct of another corporation.*"'" (*Id.* at p. 1249.) We review the court's finding for substantial evidence. (*Baize v. Eastridge Companies, LLC* (2006) 142 Cal.App.4th 293, 302 [alter ego liability reviewed for substantial evidence].)

The expressions "instrumentality" and "adjunct of another corporation" aptly describe NMW Beds's relationship to New Method. (*Las Palmas, supra,* 235 Cal.App.3d at pp. 1249-1250.) It is plain to see from the evidence above that NMW Beds and New Method operate as a single enterprise. NMW Beds's marketing, branding, and most of its clientele are all directly dependent on operating as part of the New Method facility. The owners are the same. They have the same chief executive officer. Thus, to the extent it matters, the court's single enterprise finding is supported by substantial evidence. But we emphasize again: the important point is that the Properties are being *used* as part of the drug treatment facility, which is not permitted under the relevant zoning ordinance.

This would seem to sound the death knell for the defense, except that Health and Safety Code section 11834.23 preempts local ordinances, providing a safe harbor against zoning restrictions under certain circumstances. In particular: "Whether or not unrelated persons are living together, an alcoholism or drug abuse recovery or treatment facility that serves six or fewer persons shall be considered a residential use of property for the purposes of this article. In addition, the residents and operators of the facility shall be considered a family for the purposes of any law or zoning ordinance that relates to the residential use of property pursuant to this article." (*Id.*, subd. (a).) There

are two prerequisites to invoking this section, however, that defendants fail to satisfy. First, there was no evidence the Properties here served six or fewer people. Second, this section may only be invoked by a *licensed* facility: "Any person licensed under this chapter who operates . . . an alcoholism or drug abuse recovery or treatment facility . . . may invoke the provisions of this article." (Health & Saf. Code, § 11834.21.) Although this statute is phrased in terms of who *may* invoke that article's protections, the clear implication is that an unlicensed person may not. It is undisputed that the Properties were not licensed. Both deficiencies are fatal to defendants' argument.[1]

One issue that preoccupies an inordinate amount of the briefing in this case is whether the Properties *should* have been licensed. (Cal. Code Regs. tit. 9, § 10508.) Dana Point seems to be arguing that the Properties were a nuisance *because* they were unlicensed. The court's analysis seems to follow that line of reasoning too. Against that argument, defendants contend they did not need a license under Health and Safety Code section 1505, subdivision (i), which provides an exemption for licensure for "[r]ecovery houses or other similar facilities providing group living arrangements for adults recovering from alcoholism or drug addiction *where the facility provides no care or supervision*." (Italics added.)

We start with the obvious: NMW Beds provided 24-hour supervision and thus the Properties did not qualify as recovery houses. But there is a larger point here. The nuisance question does not turn on licensure. A state license to operate a particular type of business does not necessarily carry with it the right to operate that business *in a residential zone*. In this case, licensure is only relevant to the application of Health and Safety Code section 11834.23 (exempting licensed drug treatment facilities with six or

---

[1] We note that the zoning ordinance, Municipal Code section 9.09.020, does permit the operation of a "Group Home," which is defined as "any residential care facility for six or fewer persons which is licensed by the State." This appears to conform to Health and Safety Code section 11834.23, subdivision (a).

8

fewer individuals), which we just discussed. And the only reason that section is relevant is because it specifically preempts local zoning ordinances. Otherwise, the pertinent question is not whether defendants were compliant with state licensing laws, but instead whether the use of the Properties was permitted by the zoning ordinance.

To illustrate the point, suppose, contrary to the evidence in this case, the Properties were being operated as recovery houses and thus did not require a license. Does that mean defendants win? *No.* It is not the Properties' lack of a license that creates a nuisance. It is their prohibited use. Under our hypothetical scenario, the crucial question would be whether recovery houses are permitted under the residential zoning ordinance. As it happens, Municipal Code section 9.75.270 covers something arguably similar to a recovery house: a "Group Dwelling," which is defined as "the residential occupancy of a structure by groups of more than five persons who are not related by blood, marriage or adoption, on a weekly or longer basis under a common housekeeping plan or as members of a structured organization. Typical uses would include, but not be limited to, retirement homes, boarding houses and lodging houses." We need not decide whether a recovery house would qualify as a group dwelling, however, because the residential zoning ordinance, Municipal Code section 9.09.020, only permits group dwellings with a conditional use permit, which defendants do not have. The important point is that our analysis must be grounded in the zoning ordinance, not the licensure requirements.

In a similar vein, defendants alternatively contend the Properties qualify as "Group Homes," which are defined as, "a house, apartment, or other building to be used as a self-supporting, *resident run*, alcohol and drug-free, on-going group living arrangement . . . ." (Cal. Code Regs., tit. 9, § 11002, subd. (a)(7), italics added.) We again start with the obvious: the Properties are not "resident run," which is defined as being "democratically managed." (Cal. Code Regs., tit 9, § 11002.) The residents live under an extensive list of non-negotiable rules imposed by NMW Beds. But even if the

9

Properties did qualify as group homes, defendants once again failed to connect the dots: How do we get from group home to a permitted use under the zoning ordinance? We do not.

Defendants' remaining arguments are a series of misfires.

The first misfire is that Dana Point's lawsuit violates Health and Safety Code section 11834.01, which states, "The [California Department of Health Care Services] has the sole authority in state government to license adult alcoholism or drug abuse recovery or treatment facilities." This argument is dead on arrival. Plainly, Dana Point is not attempting to license a drug treatment facility. It is simply enforcing its own zoning ordinance.

The next misfire is defendants' contention that the injunction violates the rights of the residents of the Properties under the Americans with Disabilities Act (42 U.S.C. § 12101 et seq.) and the Fair Housing Act (42 U.S.C. § 3601 et seq.), based on addiction being a disability. Assuming, without deciding, that defendants have standing to base their claim on injuries to their residents, the only specific statutes they cite are inapplicable.

First, defendants cite title 42 of the United States Code section 3604, part of the Fair Housing Act, which makes it unlawful "[t]o discriminate in the sale or rental, or to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap." There is no evidence of that here. Nothing in the Municipal Code bars the residents of the Properties from buying or renting housing in the area, and the zoning ordinance does not require defendants to deny rental of the properties *because* of a disability. The ordinance simply requires defendants either to stop treatment at the Properties or to become licensed.

10

Second, defendants cite title 42 of the United States Code section 12114, which is part of the Americans with Disabilities Act, which permits employers to bar the use of illegal drugs by employees (subsection (c)), and even defines an employee who is using drugs as not a "qualified individual with a disability" (subsection (a)), but includes as a "qualified individual with a disability" someone who has successfully rehabilitated from drug use and is no longer using (subsection (b)). That statute has no application here whatsoever because there is no employment relationship at issue.

In their final misfire, defendants contend the court's injunction amounts to a regulatory taking in violation of the Fifth and Fourteenth Amendments to the United States Constitution. To prove this claim, defendants would have to show the zoning ordinance "denies all economically beneficial or productive use" of the Properties. (*Lucas v. South Carolina Coastal Council* (1992) 505 U.S. 1003, 1015.) This is another nonstarter. Residential property in Dana Point, particularly property as beautiful as New Method's Web site describes, is obviously economically viable as simple residential property. Moreover, there has been no showing that the zoning ordinances were any different when NMW Beds acquired the Properties. It cannot acquire property in a residential zone, violate pre-existing valid ordinances, and then complain that the enforcement of those ordinances denied its property rights. NMW Beds never had the right to operate an unlicensed drug treatment facility in a residential zone. What was never had cannot be taken.

11

## DISPOSITION

The judgment is affirmed.  Defendants' motion for judicial notice is denied.[2]  Dana Point shall recover its costs incurred on appeal.

IKOLA, J.

WE CONCUR:

BEDSWORTH, ACTING P. J.

FYBEL, J.

---

[2] Defendants filed a motion for judicial notice of a pending complaint in federal court by two sober living homes against Dana Point.  The complaint concerns alleged secret amendments to Dana Point's zoning ordinance.  The complaint is irrelevant to the issues in this appeal and thus the motion for judicial notice is denied.

Filed 09/13/19

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| CITY OF DANA POINT, | |
|    Plaintiff and Respondent, | G056741 |
|      v. | (Super. Ct. No. 30-2017-00904169) |
| NEW METHOD WELLNESS, INC., et al., | O R D E R |
|    Defendants and Appellants. | |

      The City of Dana Point has requested that our opinion filed on August 23, 2019, be certified for publication. It appears that our opinion meets the standards set forth in California Rules of Court, rule 8.1105(c). The request is GRANTED.

      The opinion is ordered published in the Official Reports.


                                IKOLA, J.

WE CONCUR:


BEDSWORTH, ACTING P. J.


FYBEL, J.