Filed 9/13/22 Regency Entertainment etc. v. Worldview Entertainment etc. CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| REGENCY ENTERTAINMENT (USA), INC., et al.,<br><br>Plaintiffs and Respondents,<br><br>v.<br><br>WORLDVIEW ENTERTAINMENT HOLDINGS LLC, et al.,<br><br>Defendants and Appellants. | B306464<br><br>(Los Angeles County Super. Ct. No. BC687109) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Michael L. Stern, Judge. Affirmed.

Kendall Brill & Kelly LLP, Richard B. Kendall, Philip M. Kelly, Nicholas F. Daum and Amanda D. Barrow for Plaintiffs and Respondents.

Hogan Lovells US LLP, Paul B. Salvaty and Laura M. Groen for Defendants and Appellants.

―――――――――――

# INTRODUCTION

A film distributor sought to hold a film investment fund and its alleged corporate alter egos liable on a guaranty contract to reimburse the distributor for an advance of distribution costs. After a bench trial, the trial court found the various entity defendants were all alter egos of each other, operating as a "single enterprise," and concluded that the entire enterprise was liable on the guaranty contract. The alleged alter ego parties appeal the trial court's judgment and order imposing alter ego liability on them for the guaranty. We conclude substantial evidence supports the trial court's alter ego finding and affirm.

# FACTUAL AND PROCEDURAL HISTORY

### A. *The Parties and Worldview Entities*

Plaintiff and respondent Regency Entertainment (USA), Inc. (collectively, with Monarchy Enterprises S.A.R.L, "Regency") is a film distributor.

Defendant and appellant Worldview Entertainment Partners IX, LLC ("Worldview IX") is a special purpose "film fund" controlled by affiliated entities sharing the "Worldview" name. In addition to Worldview IX, there are three other named Worldview entity defendants and appellants: Worldview Entertainment Holdings LLC ("Worldview LLC"), Worldview Entertainment Holdings, Inc. ("Worldview Inc."), and another film fund, Worldview Entertainment Partners VII, LLC ("Worldview VII").[1]

---

[1] There are 14 additional Worldview-affiliated entities not party to this action: Worldview Entertainment Capital LLC,

Appellants describe Worldview LLC as the "parent company of the other Worldview Defendants." Maria Cestone is the chairperson and sole board member of Worldview LLC. Worldview LLC is the sole shareholder of the management company Worldview Inc.

Worldview Inc. manages and collects "fees" from (but does not own) the two "film fund" defendants, Worldview IX and Worldview VII. Cestone is the sole director of Worldview Inc.; Christopher Woodrow served as CEO and a member of the Board of Directors of Worldview Inc. until June 2014. After Woodrow's departure, a single executive, Patrick Thompson (under Cestone's direction), performed all operational tasks on behalf of all four named Worldview entities. Among other things, Worldview Inc. took "executive producer fees, production/financing fees and other fees" from Worldview IX and Worldview VII. These fees included approximately $450,000 paid by Worldview IX to Worldview Inc. that Thompson, as the person most knowledgeable for the four Worldwide entities, was unable to explain or itemize.

Worldview LLC owns an 80 percent membership interest in Worldview IX and a 50 percent membership interest in Worldview VII. Sarah Johnson owns the remaining 20 percent of

---

Worldview Entertainment Capital II LLC, Worldview Entertainment Capital III LLC, Worldview Entertainment Financing LLC, Worldview Entertainment Financing II LLC, Worldview Entertainment Partners LLC, Worldview Entertainment Partners II LLC, Worldview Entertainment Partners III LLC, Worldview Entertainment Partners IV LLC, Worldview Entertainment Partners V LLC, Worldview Entertainment Partners VI LLC, Worldview Entertainment Partners VIII LLC, Worldview Entertainment Partners X LLC and Sniper Acquisitions LLC.

Worldview IX , and Cestone and Johnson own nearly the entire remaining 50 percent of Worldview VII.[2] Worldview IX and Worldview VII have never had officers, directors, members, managers, or employees that were separate or unique to those entities.

Worldview LLC is 75 percent owned by two limited liability companies, Roseland Ventures LLC ("Roseland") and Prospect Point Capital LLC ("Prospect Point"). Cestone is the sole manager of Roseland and owns Prospect Point with her brother and Woodrow. Johnson is a 20 percent owner of Worldview LLC.[3]

Since mid-2017 Worldview VII has paid for virtually all expenses of the defendant Worldview entities, including rent, legal fees, and salaries; before 2017 such expenses were paid by Worldview Inc.

B.      *The Guaranty Agreement*

In 2014 Worldview IX invested in the feature film "Rules Don't Apply," with Regency as the film's marketer and distributor. Regency agreed to advance "prints and advertising" ("P&A") costs for the film's theatrical release. On March 1, 2014, Worldview IX entered into a separate guaranty contract with Regency to proportionally reimburse Regency for any shortfall should the film's revenues be insufficient to cover the advanced P&A costs.

---

[2]      Two other individual minor investors each hold a less than a 1 percent share of Worldview VII.

[3]      A third individual, Molly Connors, is a 5 percent owner of Worldview LLC.

4

On March 17, 2014, Worldview IX transferred $858,000 to Worldview VII. Thompson stated that "Chris Woodrow was running the company" at that time and that Thompson did not know why the money was transferred. Defendants' discovery responses asserted that the transfer was to increase Johnson's investment in "Birdman," a separate (and more commercially successful) film for which Worldview VII was the funding vehicle. On March 20, 2014, Worldview IX transferred another $2.8 million to make the direct investment in "Rules Don't Apply," after which Worldview IX effectively had no assets. The $2.8 million consisted of funds specifically invested by Johnson in Worldview IX; Thomson attested, however, that "there was some shifting around of—to other accounts that happened in that process."

In March 2016 Worldview IX obtained a "loan" of $78,302.98 from Worldview Inc. to make an "overage" payment in connection with "Rules Don't Apply" because Worldview IX had no money. Worldview Inc. was loaned the money for this "overage" from Cestone; the loan was never repaid.

Regency ultimately advanced over $20 million in investor-approved P&A costs to release "Rules Don't Apply" domestically in November 2016. Thompson was aware that Worldview IX had insufficient assets on hand to cover any shortfall. The domestic theatrical release was financially unsuccessful, and by November 2017, there was a P&A shortfall of approximately $20 million.

In November 2017 Regency issued a shortfall notice advising all investors they each owed a pro-rata share of the shortfall. The parties ultimately stipulated that Worldview IX owed $1,668,773.

C.    *The Trial Court Concludes the Worldview Defendants*
        *Are Alter Egos of Each Other*

Regency settled with other investors who had signed guaranties.  Regency and the Worldview defendants proceeded with litigation, including a four-day bench trial on the Worldview defendants' unclean hand defense, which the trial court rejected.  Regency and the Worldview defendants then agreed to a bench trial on the issue of alter ego liability, based on a written record alone.

On February 7, 2020, the trial court issued its ruling and statement of decision, finding Regency "met its burden of proof that alter ego liability should be applied in this instance."  The court found the Worldview entities "are operated and controlled by the same persons," chiefly Cestone and Johnson, and that "[t]he overlapping and interlocking ownership of the two entities is remarkable."  It concluded that "taken together, Worldview VII and Worldview IX indistinguishably and collectively constitute Worldview LLC," and there was merely "a fiction of separately standing companies."   Ultimately, it concluded that "[w]hile a thin external veneer of separation may have been attempted to be maintained, an examination of the actual operations of Worldview VII and Worldview IX shows that they have been functioning under common control and operating as a unitary company that transfers monies back and forth. . . .  While Worldview VII and Worldview IX may have had separate bank accounts and paid separate taxes, it appears that the two entities commingled funds by cross-payment of rent payments and salaries and made various insufficiently explained transfers of funds between the two entities."

The trial court also found "a paucity of evidence that the Worldview entities properly maintained corporate formalities" and "significant undercapitalization" of Worldview IX, which had "inadequate bank resources or other access to funds that might be utilized [to] make any required payment on a shortfall under the Guaranty."

The court determined that if alter ego liability were not applied, the result would be inequitable, reasoning that the Worldview entities "must be held accountable for their contractual obligations because they disregarded formalities, commingled funds and were operated as a single entity." It held "the Court concludes that the single enterprise doctrine is applicable in this instance and the Worldview enterprise, as a whole, is liable under the Guaranty because plaintiff Regency has pierced the corporate veil."

The parties agreed to a stipulated judgment of $1,668,773, plus prejudgment interest of $188,668, for a total of $1,857,441, with the parties reserving the right to appeal.

This appeal followed.

## DISCUSSION

A.    *Standard of Review*

"In reviewing a finding of alter ego liability, we must consider whether the trial court's findings are supported by substantial evidence." (*Baize v. Eastridge Companies, LLC* (2006) 142 Cal.App.4th 293, 302; accord, *Toho-Towa Co., LTD. v. Morgan Creek Productions, Inc.* (2013) 217 Cal.App.4th 1096, 1108 ["Whether the evidence has established that the corporate veil should be ignored is primarily a question of fact which should

7

not be disturbed when supported by substantial evidence"].)  We will not reverse the trial court's factual determination of whether a corporation is an alter ego of another organization or individual if it is supported by substantial evidence.  (*Misik v. D'Arco* (2011) 197 Cal.App.4th 1065, 1072 (*Misik*); *Las Palmas Associates v. Las Palmas Center Associates* (1991) 235 Cal.App.3d 1220, 1248 (*Las Palmas*).)

In reviewing for substantial evidence, "we resolve all conflicts in the relevant evidence 'against the appellant and in support of the order.'"  (*Sonora Diamond Corp. v. Superior Court* (2000) 83 Cal.App.4th 523, 535 (*Sonora Diamond*).)  Substantial evidence may be contradicted or uncontradicted; "[t]he appellate court has no power to judge the effect or value of the evidence, to weigh the evidence, to consider the credibility of witnesses, or to resolve conflicts in the evidence or in the reasonable inferences that may be drawn from the conflicts."  (*Wells Fargo Bank, N.A. v. Weinberg* (2014) 227 Cal.App.4th 1, 8.)  Accordingly, an appellant raising a claim of insufficiency of the evidence assumes a "'daunting burden'": "The test 'is simply whether there is substantial evidence in favor of the respondent.  If this "substantial" evidence is present, no matter how slight it may appear in comparison with the contradictory evidence, the judgment must be upheld.  As a general rule, therefore, we will look only at the evidence and reasonable inferences supporting the successful party, and disregard the contrary showing.'" (*People v. Overstock.com, Inc.* (2017) 12 Cal.App.5th 1064, 1079.)

B.     *Law of Alter Ego and the "Single-enterprise" Rule*
Appellants do not contest Worldview IX's liability for the total amount of the $1,857,441 judgment.  Rather, the alter ego

8

defendants challenge the sufficiency of the evidence to support the trial court's finding that they were alter egos of Worldview IX. An alter ego determination is an equitable finding that rests in the trial court's discretion as a question of fact. (*Las Palmas, supra,* 235 Cal.App.3d at p. 1248.) "Under the alter ego doctrine, . . . when the corporate form is used to perpetrate a fraud, circumvent a statute, or accomplish some other wrongful or inequitable purpose, the courts will ignore the corporate entity and deem the corporation's acts to be those of the persons or organizations actually controlling the corporation, in most instances the equitable owners." (*Sonora Diamond, supra,* 83 Cal.App.4th at p. 538.)

"There is no litmus test to determine when the corporate veil will be pierced; rather, the result will depend on the circumstances of each particular case." (*Mesler v. Bragg Management Co.* (1985) 39 Cal.3d 290, 300.) However, to apply alter ego liability and hold the equitable owners or parties controlling the organization responsible for the corporation's conduct requires: "'(1) that there be such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist and (2) that, if the acts are treated as those of the corporation alone, an inequitable result will follow.'" (*Ibid.;* accord, *Hub City Solid Waste Services, Inc. v. City of Compton* (2010) 186 Cal.App.4th 1114, 1122; *Sonora Diamond, supra,* 83 Cal.App.4th at p. 538.)

The first requirement "encompasses a series of factors," including: "one individual's ownership of all the stock in a corporation; use of the same office or business location; commingling of funds and other assets of the individual and corporation; an individual holding out that he is personally liable

9

for debts of the corporation; identical directors and officers; failure to maintain minutes or adequate corporate records; disregard of corporate formalities; absence or inadequate capitalization; and the use of the corporation as a mere shell, instrumentality or conduit for the business of an individual." (*Misik, supra,* 197 Cal.App.4th at p. 1072.)

Here, the central question is whether the other Worldview entity defendants have sufficient unity of interest and ownership to be equitably treated as alter egos of Worldview IX for liability under the guaranty. Under the "single-enterprise" rule, a "sister or affiliated" company can be held liable under the alter ego doctrine when a court finds that, as a matter of equity, the organization has been operating as a single enterprise, considering the relevant factors. (*Troyk v. Farmers Group, Inc.* (2009) 171 Cal.App.4th 1305, 1341 (*Troyk*).) Where a particular corporation is a "shell" and is "so organized and controlled, and its affairs are so conducted, as to make it merely an instrumentality, agency, conduit, or adjunct of another corporation," the "single enterprise" doctrine will apply. (*Las Palmas, supra,* 235 Cal.App.3d at p. 1249.) "No one characteristic governs, but the courts must look at all the circumstances to determine whether the doctrine should be applied." (*Troyk*, at p. 1342.)

C.    *Sufficient Evidence Supports the Trial Court's Findings of Alter Ego*

Ample evidence presented at trial supports the court's finding that the entity defendants were alter egos of Worldview IX. The defendant Worldview entities were owned and controlled by the same primary investors: Cestone and to a lesser extent,

10

Johnson. The defendant entities also employed the same executive and used funds interchangeably across the larger Worldwide organization. Beginning in mid-2017, Worldview VII paid for the expenses on behalf of the other Worldview entities, including rent, salaries, legal fees and office expenses. All the Worldview entities also used a single office and mailing address.

Since 2014 the affiliated entities largely disregarded corporate formalities, including failing to hold board meetings and failing to keep corporate minutes.[4] Funds were also freely transferred among the different Worldview entities, and individual investors, including hundreds of thousands of dollars in unexplained "fees" that were paid from Worldview IX to Worldview Inc. Money was similarly transferred between the

---

[4] Defendants note that Corporations Code section 17703.04, subdivision (b), provides that "failure to hold meetings of members or managers [of a limited liability company] or the failure to observe formalities pertaining to the calling or conduct of meetings shall not be a factor tending to establish that a member or the members have alter ego or personal liability for any debt, obligation, or liability of the limited liability company where the articles of organization or operating agreement do not expressly require that meetings be held," and that the Operating Agreements for three of the entities—Worldwide LLC, Worldwide IX and Worldwide VII—do not expressly require meetings. The evidence defendants rely upon does not clearly support their argument; the incorporation documents contemplate that an annual meeting for Worldwide LLC and Worldwide IX "will be held"; and the documents for Worldwide VII use permissive language, stating an annual meeting "may be held." Irrespective of the lack of corporate meetings, there is sufficient evidence that the different Worldview defendants were not treated as separate entities.

11

two film funds and Cestone, Worldview Inc. and Worldview IX to cover "overages" owed by Worldview IX.

The overlap in ownership, employees, physical space and business practices, as well as the lack of separate governance functions among the Worldview entities, reveals a disregard for corporate formalities and the failure to maintain arm's length corporate relationships. In addition, the transfer of funds among the Worldview entities, particularly the March 2014 transfer of $858,000 from Worldview IX to Worldview VII, exemplifies a commingling of assets and suggests a pattern of improper undercapitalization of Worldview IX assets to Regency's ultimate detriment. In its totality, this evidence is sufficient to establish a unity of interest and ownership that demonstrates that separate individual corporations no longer exist—the first of the two requirements necessary for finding alter ego.

The second requirement, that an inequitable result will follow if the guaranty obligation is treated as that of Worldview IX alone, is also supported by substantial evidence. The $858,000 transfer of funds from Worldview IX to Worldview VII appears to have occurred to maximize Johnson's investment in a different film (by using a different corporate entity) while leaving Worldview IX undercapitalized. This transfer and commingling of assets supports an inference of bad faith and supports the trial court's conclusion that the defendants manipulated the finances of the corporate entities to avoid Worldview IX's liability on the guaranty. Given Worldview IX's limited assets, payment on the guaranty to Regency would be impossible without resorting to the assets of the other entities. It would be inequitable to allow the affiliated Worldview entities to avoid liability by pointing to siloed corporate identities that were previously ignored. Thus,

substantial evidence supports the trial court's findings regarding alter ego liability.

## DISPOSITION

The judgment of the trial court is affirmed. Respondents are awarded their costs on appeal.


WISE, J.*


We concur:


PERLUSS, P. J.


SEGAL, J.

---

*     Judge of the Alameda County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.